Filed 12/21/15; pub. order 12/31/15 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.L. et al., Persons Coming Under the Juvenile Court Law. | |
| | D068464 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ13677B-C) |
| v. | |
| AMBER L., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Michael Imhoff, Commissioner. Affirmed.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, Jennifer M. Stone, Deputy County Counsel, for Plaintiff and Respondent.

Amber L. appeals from orders terminating her parental rights to her minor children, A.L. and A.R. (together minors), under Welfare and Institutions Code section 366.26. (Statutory references are to the Welfare and Institutions Code unless otherwise noted.) Amber's appeal raises issues relating to the substantive provisions of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.), and related California statutes. We conclude the juvenile court erred by refusing to hear testimony on the issue of active efforts at the permanency planning hearing, but that the court's error was harmless. We also reject Amber's contention that insufficient evidence supported the juvenile court's finding that continued parental custody would likely result in serious physical or emotional damage to the minors, and affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2013, Amber arrived at a probation drug test appointment with her two-year-old daughter, A.R., and told her probation officer that she had used heroin just hours before. Amber told the officer A.R.'s father, Manuel R., was waiting in the car and could care for the child. When officers went to the car, Manuel also appeared to be under the influence of drugs. Officers searched Manuel and found a hypodermic needle in his pocket. Officers also searched the car and found marijuana and another needle in Amber's purse. Both parents were arrested and A.R. was taken to Polinsky Children's Center. At the time of their parents' arrest, A.R. and her half-sister, four-year-old A.L., were living with their paternal grandmother. Neither Amber nor Manuel lived with the paternal grandmother. Amber was staying in hotels and Manuel was homeless. (Manuel's parental

2

rights to A.R. were also terminated, as were A.L.'s father's rights, but neither father is a party to this appeal.)

As a result of the parents' arrests, the San Diego County Health and Human Services Agency (Agency) filed petitions on behalf of the minors under section 300, subdivision (b), alleging they had suffered, or were at a substantial risk of suffering, serious physical harm as a result of their parents' inability to care for them because of drug use. The Agency's report for the detention hearing revealed Amber's history with the Agency, including failing to reunify with an older son as a result of drug abuse and several referrals related to her drug use in the years preceding the current petitions. A.L. tested positive for methadone at birth, but Amber successfully completed voluntary services and avoided further intervention by the Agency at that time.

Amber is an enrolled member of the Iipay Nation of Santa Ysabel. At the time of her arrest, she told the Agency's social worker the minors might be eligible for enrollment as members of the tribe. Before the jurisdiction and disposition hearing, the Agency provided the tribe with formal notice of the hearing and the family's social worker, who was part of the Agency's Indian Specialty Unit, contacted the tribe's director of family services, Linda Ruis. Ruis indicated the children should be considered Indian children under ICWA, and that she intended to file a declaration for the jurisdiction and disposition hearing on behalf of the tribe.

A. *Jurisdiction and Disposition Hearing*

Before the jurisdiction and disposition hearing, the Agency's social worker, Sara Whitney, met with Amber while in custody at Las Colinas Detention and Reentry Facility.

3

The social worker discussed services available to Amber as a member of a Native American tribe and provided contact information for specific service providers. At the hearing in December 2013, the Agency recommended the court order reunification services for Amber and that the minors remain in the home of the paternal grandmother. Ruis also testified at the hearing. At the conclusion of the hearing, the juvenile court made true findings on the petitions, declared the minors dependants, and found reasonable efforts were made to prevent their removal.

The juvenile court also separately found "by clear and convincing evidence pursuant to 25 U.S.C. section 1912, and based in part upon the testimony of a qualified expert witness, the continued custody of the child[ren] by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child," and that under title 25 United States Code section 1912(d) "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of this Indian family and that these efforts have proved unsuccessful." The juvenile court ordered the minors removed from their parents' custody and placed with their paternal grandmother in accordance with ICWA's placement preferences. The court also ordered reunification services for both parents and supervised visitation for Amber upon her release from custody. The court set a six-month review hearing for June 12, 2014.

B. *Six-Month Review Hearing*

During the review period, Amber made little progress in addressing her drug abuse and failed to participate in the reunification services she was referred to by the Agency. Amber did not stay in contact with Whitney or follow through on Whitney's repeated

4

efforts to engage Amber in drug treatment.  In early March 2014, Ruis informed Whitney that Amber told Ruis she was in treatment, but that Amber had not provided any details about the treatment facility.  Days later Amber left a message for Whitney indicating she was waiting for a bed to open at a residential treatment program, but when Whitney returned the call the phone number did not have an operational voicemail.  Whitney finally met with Amber in late March, and Amber told Whitney she had been in touch with Southern Indian Health to obtain parenting and individual counseling, and that she had been attending Narcotics Anonymous meetings twice a week.

Shortly thereafter, Whitney spoke with the parenting coordinator at one of Southern Indian Health's partners, who indicated she would follow up with Amber to help her obtain counseling.  Whitney then followed up with Amber and provided her with contact information for the parenting coordinator, as well as additional referrals for residential drug treatment services.  Whitney and Ruis continued their follow up efforts, and Amber finally entered a residential drug treatment program at the end of April, just six weeks before the review hearing.  After just four days, however, Amber tested positive for methamphetamines and morphine and left the program.

During the review period, Amber's visitation with the minors at the paternal grandmother's home was sporadic.  She would sometimes arrive unannounced, once after the minors were already asleep, and frequently failed to show up after promising to visit.  In January, the paternal grandmother told the social worker she stopped telling the minors Amber would be visiting to prevent their disappointment when Amber did not follow through.  Amber's visitation somewhat improved in March and April, but at Amber's final

5

visit just days after she left the drug treatment program the paternal grandmother found a hypodermic needle in the couch where Amber had fallen asleep during the visit.

In the Agency's report for the review hearing it recommended termination of reunification services, and that the court set a hearing under section 366.26 to select a permanent plan for the minors. The Agency's report indicated Whitney had consulted with Ruis, who agreed with the recommendation. The Agency recommended the court find "by clear and convincing evidence and pursuant to [ICWA] (25 U.S.C. 1912[d]), active efforts were made to provide remedial services and rehabilitative programs designed to prevent the breakup of this Indian family and that these efforts have proved unsuccessful." The Agency also recommended the court find, "beyond a reasonable doubt, pursuant to 25 U.S.C. Section 1912(f) and based in part upon the testimony of a qualified witness, the continued custody of the child[ren] by the parent or Indian custodian is likely to result in serious emotional or physical damage . . . ."

The parents contested the Agency's recommendations but failed to appear at the July 2014 review hearing. At the hearing, the court denied the parents' request for a continuance and received the Agency's report into evidence. Whitney was available for cross-examination, but no questions were posed to her. Amber's counsel asked the court to continue reunification services without providing any specific basis for the request. The juvenile court found by clear and convincing evidence that return of the minors to their parents would be detrimental and that reasonable services designed to reunify the family were offered, but were unsuccessful. The court also adopted the Agency's recommended findings under title 25 United States Code sections 1912(d) and (f) of ICWA. The court

6

terminated services, continued placement with the paternal grandmother and set a permanency planning hearing under section 366.26 for November 2014.

C. *Termination of Parental Rights and Permanency Planning Hearing*

As a result of continuances requested by the Agency for additional time to obtain an Indian expert declaration from Ruis, the permanency planning hearing did not occur until May 2015. In the period between the termination of reunification services and the hearing, Amber visited the minors only sporadically. She was again incarcerated during a period of that time, and after failing to show up for a supervised visit in March 2015 was unreachable for several weeks directly preceding the permanency planning hearing.

The paternal grandmother continued to care for the minors and was committed to adopting them. Shortly after the final review hearing, the paternal grandmother was displaced and was living in hotels with the minors for several weeks. By April, however, the paternal grandmother's housing stabilized and she and the minors were living with a maternal aunt and doing well. A.L. had some development delays as a result of the trauma and upheaval they had experienced, and was participating in therapy. A.L.'s therapist did not think even visits with Amber were in A.L.'s best interest. A.L., who was five at the time of the permanency planning hearing understood the concept of adoption and wanted to live with her grandmother. A.L. stated she loved Amber but did not want to live with her. Four-year-old A.R. also expressed a desire to stay with the paternal grandmother.

In its report for the permanency planning hearing, the Agency recommended the termination of parental rights and opined the minors were generally and specifically adoptable. Ruis submitted an expert declaration in advance of the permanency planning

7

hearing that echoed the Agency's recommendations. Ruis stated it was her opinion that the minors would suffer serious emotional or physical harm if returned to the care and custody of the parents. Ruis based her opinion on Amber's and Manuel's extensive histories of drug abuse and criminal activity, the parents' failure to participate in services and visitation provided during the dependency proceeding, and Amber's failure to reunify with her oldest child in a prior dependency proceeding. Ruis also opined "that active efforts were made to provide remedial and rehabilitative services designed to prevent the breakup of th[e] Indian family or eliminate the need for the removal."

At the permanency planning hearing, the court received the Agency's reports and Ruis's declaration into evidence, and heard the testimony of the family's current social worker, Ruis, Amber, and the paternal grandmother. While cross-examining Ruis, Amber's counsel asked Ruis if Amber had access to remedial services after reunification services were terminated. Ruis responded she did not know. The juvenile court then asked if the portion of Ruis's declaration that addressed the Agency's active efforts to provide remedial services and rehabilitative programs under ICWA was relevant in light of the fact that the court had already found adequate active efforts were made by the Agency at the six-month review hearing. In response, Amber's counsel stated "the only opinion provided was that active efforts were made to provide remedial and rehabilitative services designed to prevent the break-up of the Indian family." The court concluded the issue of active efforts had already been determined, and the only expert testimony properly before the court concerned the issue of continued custody under title 25 United States Code section 1912(f). The Agency's counsel agreed with the ruling and Amber's counsel stated she "would accept

8

that ruling from the court."  The court then excluded the portion of Ruis's declaration concerning the Agency's active efforts.

Amber's attorney continued her examination of Ruis.  Ruis testified she met Amber in person for the first time that day and learned Amber had recently enrolled in a methadone program and had clean drug tests.  Ruis also stated that she had based her declaration on the Agency's reports and two phone conversations she had with Amber during the proceedings.  She admitted her husband had passed away a few months earlier, and "so a lot of things that I've read probably I don't know.  I'm not saying that I would change my opinion because she's gotten into the methadone program.  It's just that's—I've been like very emotional and in and out."

Amber testified that after the termination of reunification services she sought help for her drug addiction and had enrolled in treatment.  The court admitted a letter from a treatment program indicating Amber was enrolled, and an attendance sheet showing Amber had attended eight 12-step meetings between April 17, 2015 and May 10, 2015.  Amber also testified she visited the minors regularly without the Agency's knowledge.  The paternal grandmother, however, denied the visits occurred.

After arguments of counsel, the juvenile court found by clear and convincing evidence the minors were generally adoptable and that none of the exceptions to adoption applied.  The court also found, beyond a reasonable doubt, that continued custody of the minors by the parents was likely to result in serious emotional and physical danger to the minors.  The court terminated parental rights and referred the minors to adoptive placement.

9

DISCUSSION

I

Amber asserts the juvenile court erred at the permanency planning hearing by excluding evidence related to the Agency's active efforts to provide remedial and rehabilitative programs to prevent the breakup of her family and by failing to make a finding that active efforts were made. Amber also asserts the juvenile court's finding of active efforts at the six-month review hearing was not adequate. The Agency responds that Amber's failure to challenge the finding made at the review hearing by writ petition under California Rules of Court, rule 5.482 (subsequent rule references are to the California Rules of Court), resulted in a forfeiture of her challenge to that finding. The Agency also contends that even if Amber's challenge is properly before this court, the juvenile court's active efforts finding at the review hearing was adequate and the court did not err by precluding further litigation of the issue at the permanency planning hearing.

A

*Legal Standards*

Congress enacted ICWA in 1978 "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families . . . ." (25 U.S.C. § 1902.) The law defines an Indian child as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe; . . . ." (25 U.S.C. § 1903(4).) ICWA provides that any party seeking foster care placement or termination of parental rights of an Indian child must first satisfy the court that "active efforts have been

10

made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." (25 U.S.C. § 1912(d).)

In 2006, California's statutes were amended to bring them into greater conformity with ICWA. The new legislation, which became effective on January 1, 2007, amended section 366.26 to add new subdivision (c)(2)(B)(i) and added section 361.7. (Stats. 2006 ch. 838, § 52.) Amended section 366.26 states that the court "shall not terminate parental rights if, in the case of an Indian child . . . (i) At the hearing terminating parental rights, the court has found that active efforts were not made as required in Section 361.7." (§ 366.26, subd. (c)(2)(B)(i).) New section 361.7 states, in relevant part: "(a) [A] party seeking an involuntary foster care placement of, or termination of parental rights over, an Indian child shall provide evidence to the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful. [¶] (b) What constitutes active efforts shall be assessed on a case-by-case basis. The active efforts shall be made in a manner that takes into account the prevailing social and cultural values, conditions, and way of life of the Indian child's tribe. Active efforts shall utilize the available resources of the Indian child's extended family, tribe, tribal and other Indian social service agencies, and individual Indian caregiver service providers." (§ 361.7.)

Active efforts have been described as "timely and affirmative steps taken to accomplish the goal which Congress has set: to avoid the breakup of Indian families whenever possible by providing services designed to remedy problems which might lead to

11

severance of the parent-child relationship." (*Letitia V. v. Superior Court* (2000) 81 Cal.App.4th 1009, 1016; see also *In re K.B.* (2009) 173 Cal.App.4th 1275, 1284.) This court recently held that " '[t]he adequacy of reunification plans and the reasonableness of [the Agency's] efforts are judged according to the circumstances of each case.' [Citation.]. The Agency 'must make a good faith effort to develop and implement a family reunification plan. [Citation.] "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . ." ' " (*In re A.C.* (2015) 239 Cal.App.4th 641, 657.)

"Whether active efforts were made is a mixed question of law and fact." (*In re K.B.*, *supra*, 173 Cal.App.4th 1275, 1286.) The reviewing court determines the services that were provided by reference to the record. "Whether those services constituted 'active efforts' within the meaning of section 361.7 is a question of law which we decide independently." (*Id*. at p. 1286.) If we conclude that the court did not comply with ICWA and California's concomitant provisions, we apply the harmless error standard and reverse only if the error is prejudicial. (See, e.g., *In re E.W.* (2009) 170 Cal.App.4th 396, 402-403.)

## B

### *Forfeiture*

The Agency contends Amber is foreclosed from challenging the juvenile court's active efforts finding at the final review hearing because she did not challenge that finding

12

by writ petition. Section 366.26, subdivision (*l*)(1) states that "[a]n order by the court that a hearing pursuant to this section be held is not appealable at any time unless all of the following apply: (A) A petition for extraordinary writ was filed in a timely manner. (B) The petition substantively addressed the specific issues to be challenged and supported that challenge by an adequate record. (C) The petition for extraordinary review was summarily denied or otherwise not decided on the merits." (§ 366.26, subd. (*l*)(1).) Under this statute, "[a]ll court orders, regardless of their nature, made at a hearing in which a section 366.26 permanency planning hearing is set must be challenged by a petition for extraordinary writ." (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 247 (*Merrick V.*).)

The provision ensures that challenges to findings made at the time reunification services are terminated are resolved expeditiously, and do not interfere with later proceedings. (See *Merrick V.*, *supra*, 122 Cal.Ap.4th at p. 248 ["The goals of expedition and finality would be compromised if [such orders are] permitted to be raised by appeal from the order itself or from a later permanent planning order and therefore allowed to remain undecided until well after the permanent plan was decided upon. "]; *Joyce G. v. Superior Court* (1995) 38 Cal.App.4th 1501, 1512 ["The purpose of the statute is to provide for immediate writ review of meritorious issues subsumed within the order setting a section 366.26 hearing to ensure that the hearing is not infected with reversible error even before it commences."].)

Amber was not present at the final review hearing but the court ordered her counsel to notify her of her right to file a writ petition and ordered the court's business office to serve her with a writ packet at her designated address. Amber did not subsequently seek

13

writ review and she does not allege defective notice of her right to obtain review of the orders made at the review hearing. As a result, we agree with the Agency that Amber forfeited her right to challenge the juvenile court's active efforts finding at the final review hearing. Even though Amber did not preserve a challenge to that finding, we must still address her assertion that the juvenile court erred by failing to allow further litigation on the issue of active efforts and not making the finding a second time at the permanency planning hearing.

C

*Juvenile Court's Failure to Make Active Efforts Finding at Termination*

As discussed, Amber asserts the court erred by failing to allow evidence related to the issue of the Agency's active efforts under ICWA and California's related provisions at the time her parental rights were terminated. We agree that the court erred by foreclosing evidence on this point on its own motion and by failing to make a new active efforts finding.

This case highlights a gap between federal law and the manner in which California's dependency proceedings are conducted. "[B]ecause the ' "critical decision[s] regarding parental rights . . . [and] that the minor cannot be returned home" ' [are] made at the earlier review hearing, the issues at the section 366.26 hearing are generally limited to the questions whether the child is adoptable and whether there is a statutory exception to adoption." (*In re Matthew Z.* (2000) 80 Cal.App.4th 545, 552-553.) "[U]nlike the termination hearings in most states, the purpose of the final termination hearing in California 'is not to accumulate further evidence of parental unfitness and danger to the

14

child, but to begin the task of finding the child a permanent alternative family placement.' "
(*Ibid.*)

ICWA's active effort requirement under title 25 United States Code section 1912(d) parallels the reasonable efforts finding that must be made at the final review hearing under state law. Specifically, before setting the permanency planning hearing the juvenile court must first find "the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (Welf. & Inst. Code, §§ 366.21, subds. (e) & (f), 366.22, subds. (a) & (b).) Under this scheme, it is efficient for the juvenile court to make the requisite ICWA findings, including the active efforts finding under title 25 United States Code section 1912(d), "at the final review hearing where the court sets the matter for a determination on a permanent plan" since those same findings "form the factual basis for a later termination decision." (*In re Matthew Z., supra*, 80 Cal.App.4th at p. 553.)

Section 366.26, subdivision (c)(2)(B)(i), however, explicitly allows the issue to be addressed at the permanency planning hearing. (See *Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371 [Words of a statute are to be given a plain and commonsense meaning. "When the words are clear and unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history."].) The provision states that "*at the hearing terminating parental rights*" the court shall not terminate parental rights if it finds "active efforts were not made . . . ." (§366.26, subd. (c)(2)( B)(i), italics added; see also rule 5.485, subd. (a) ["The court may only terminate parental rights to an Indian child or declare an Indian child free of the custody and control

15

of one or both parents if *at the hearing terminating parental rights* or declaring the child free of the custody and control of one or both parents, the court . . . [f]inds by clear and convincing evidence that active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family were made"], italics added.) If the legislature intended to foreclose reconsideration of the active efforts requirement at the permanency planning hearing, it could have easily done so. Indeed, the preceding subdivision of the statute ((c)(2)(A)) precludes terminating parental rights unless "[*a*]*t each hearing at which the court was required to consider reasonable efforts or services*, the court has found that reasonable efforts were not made or that reasonable services were not offered or provided." (§366.26, subd. (c)(2)(A), italics added.)

Here, when Amber's attorney attempted to question Ruis on the portion of her declaration addressing whether the Agency had made the active efforts required under ICWA and sections 361.7 and 366.26, subdivision (c)(2)(B)(i), the court on its own motion prohibited further questions and struck the portion of Ruis's declaration which stated the Agency made the requisite active efforts. This was error under the plain language of section 366.26, subdvision (c)(2)(B)(i). The provision clearly contemplates consideration of the active efforts requirement at the permanency planning hearing. The juvenile court's decision to preclude evidence on the issue and failure to make a finding was, therefore, error.

The Agency argues reconsideration of the issue at the permanency planning hearing was unnecessary and suggests the issue here is analogous to that presented in *Matthew Z. Matthew Z.* held the juvenile court did not err by failing to make a detriment finding under

16

ICWA (25 U.S.C. 1912(f)) at the time parental rights were terminated when the court had previously made the finding at the final review hearing. We agree with the Agency that the timing of the detriment finding at issue in *Matthew Z.* and the timing of the active efforts finding at issue here are analogous. Both required findings highlight the gap between ICWA's requirements and the statutory timeline of juvenile dependency proceedings in this state. As we observed in *Matthew Z.*, requiring a second detriment finding at the time parental rights are terminated raises "difficult issues as to whether the parent would have the opportunity to avoid the required writ procedures and reassert the identical . . . issue . . . when appealing from the section 366.26 order." (*Matthew Z.*, *supra*, 80 Cal.App.4th at p. 554.) *Matthew Z.*, however, was decided before the 2006 amendments to the Welfare and Institutions Code made clear ICWA's active efforts finding is properly addressed at the termination hearing.

The Agency also notes that in *In re. A.C.* (2015) 239 Cal.App.4th 191 (*A.C.*), we recently "upheld an 'active efforts' finding made by the juvenile court at a 12-month-review hearing where the juvenile court terminated services and set a section 366.26 hearing." The issue before the court in *A.C.*, however, was not the same as that presented here. There, the father argued he had not forfeited his right to challenge the active efforts finding at the final review hearing and could properly proceed on a writ petition under rule 8.452 "even though his previously appointed appellate attorney declined to file such a writ petition after the 12-month orders were made." (*A.C.*, at p. 644.) In order to determine if the father's appointed appellate attorney had provided ineffective assistance of counsel by failing to challenge the active efforts finding, the court reviewed and affirmed the earlier

17

ruling. (*Id*. at p. 654.) *A.C.* did not consider whether that finding foreclosed reconsideration of the issue at the permanency planning stage.

We recognize some inefficiency is created by the potential of a second active efforts finding. However, the statute is clear that the issue is properly before the juvenile court at the permanency planning hearing. This result is particularly appropriate where, as in this case, the permanency planning hearing is delayed well beyond the time court terminates reunification services. (See *Matthew Z.*, *supra*, 80 Cal.App.4th at p. 555 [Holding (before the 2006 amendment to section 366.26 and addition of section 361.7), that the juvenile court should address the detriment finding at the permanency planning hearing if the "parent presents evidence of changed circumstances or shows the finding was stale because the period between the referral hearing and the section 366.26 hearing was substantially longer than the 120-day statutory period."].)

D

*Prejudicial Effect*

Although we conclude the court erred by preventing Amber from revisiting the issue of active efforts at the permanency planning hearing, we do not agree with Amber that reversal is warranted. It is clear from the record that the services provided to Amber constituted active efforts. Because it was not reasonably probable that the finding, if made, would have been in Amber's favor, the court's failure to make the finding was harmless. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218.)

Amber argues the juvenile court's earlier active finding was not supported by the evidence and that the court improperly conflated active efforts under ICWA with the reasonable services standard that applied to the termination of her reunification services under section 366.21, subdivision (e). She asserts that recently issued Bureau of Indian Affairs (BIA) Guidelines for State Courts and Agencies in Indian Child Custody Proceedings (Guidelines) clarify that "active efforts" are "a level of effort beyond 'reasonable efforts' " that are required for states to qualify for federal foster care and adoption assistance under the Social Security Act. (Guidelines, 80 FR 10146-02 (Feb. 25, 2015), at pp. 10147, 10150.)

Amber concedes, however, that the new BIA Guidelines are "consistent with statutes and Rules of Court from this State" and also recognizes that the Guidelines are not binding authority. As we recently held "[e]ven in light of the new guidelines information, the general principle still applies[] that '[t]he adequacy of reunification plans and the reasonable of [the Agency's] efforts are judged according to the circumstances of each case.' " (*A.C.,* 239 Cal.App.4th at p. 657.) As discussed, to satisfy ICWA and California's corresponding requirements the Agency " 'must make a good faith effort to develop and implement a family reunification plan. [Citation.] "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . ." ' " (*Ibid*.)

The record here demonstrates the Agency satisfied this standard. The Agency identified the problem that prevented Amber from providing safe and adequate care for her minor children—her drug abuse—and made a good faith effort to develop and implement a plan to address the problem and to return the minors to Amber's care. The Agency attempted to maintain contact with Amber in the face of her steady resistance. The Agency and Ruis were even successful in getting Amber into treatment for a brief period of time.

Further, Whitney kept Ruis abreast of the proceedings from the very first weeks of the dependency and sought Ruis's help and input throughout the proceedings. The record shows Ruis and Whitney worked together to try to help Amber obtain the treatment she needed. The Agency also placed the minors in the home of the paternal grandmother in compliance with both Amber's wishes and ICWA's statutory placement preference. (See *In re Anthony T.* (2012) 208 Cal.App.4th 1019, 1027 ["In the absence of good cause to the contrary, the preferred placement order for an Indian child is *with a member of the child's extended family*; a foster home approved by the Indian child's tribe; an Indian foster home; or an institution for children approved by an Indian tribe or operated by an Indian organization."], italics added.)

Amber asserts the Agency's efforts were not adequate because "despite the recognized problems with the paternal grandmother's housing" it did not "check for available housing resources" or make efforts to place the minors with maternal relatives who had a tribal affiliation. Amber also argues there was no evidence the Agency took steps to secure the minors' tribal membership. With respect to placement, by the time of the permanency planning hearing the paternal grandmother's housing situation had

20

improved. She was in stable housing, with a maternal relative, and was committed to adopting the minors. Amber points to the fact that the juvenile court declined to find the children were specifically adoptable because of the housing insecurity faced by the paternal grandmother. But this finding did not negate the Agency's efforts to keep the minors in Amber's preferred placement with the paternal grandmother, who also satisfied IWCA's primary placement preference.

With respect to Amber's assertion that the Agency failed to identify maternal relatives for placement, Whitney was in contact with the maternal grandmother about visitation and provided her with information she needed to obtain clearance from the Agency to set up visitation. Additionally, at the time of the permanency planning hearing the paternal grandmother and the minors were living with a maternal relative. Ruis also testified that if the paternal grandmother was not approved to adopt the minors then Ruis would look for another tribal placement.

As to the Agency's efforts to enroll the minors in the tribe, as soon as Ruis was contacted she confirmed Amber's membership in the tribe and that the minors should be considered members as well. As the BIA Guidelines make clear, "the determination by a tribe of whether a child is a member . . . is solely within the jurisdiction and authority of the tribe." (Guidelines, 80 FR 10146-02 at p. 10153.) "[F]ormal enrollment is not required for tribal membership. . . . The only relevant factor is whether the tribe verifies that the child is a member or eligible for membership." (*Ibid*.) Amber did not raise any deficiency in the Agency's efforts to enroll the minors in the tribe in the juvenile court and presents no

21

argument here concerning why Ruis's verification of the minors' eligibility for membership is insufficient.

In sum, the Agency was not required to, nor could it have, forced Amber to take the steps necessary to be able to safely parent the minors. "The reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself. The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it." (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038.) Although the Agency might have done more to assist Amber, its efforts in this case satisfied ICWA and state law requirements.

## II

Amber next contends insufficient evidence supported the juvenile court's finding that her continued custody of the minors would likely result in serious physical or emotional damage to them.

## A

Before the court can terminate parental rights it must make a finding, "supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child." (25 U.S.C. § 1912(f); see also § 366.26, subd. (c)(2)(B)(ii) ["The court shall not terminate parental rights if: (ii) The court does not make a determination at the hearing terminating parental rights, supported by evidence beyond a reasonable doubt, including testimony of one or more 'qualified expert witnesses' . . . , that the continued custody of the child by the parent is likely to result in serious emotional or

22

physical damage to the child."]; and 361.7, subd. (c) ["No foster care placement or guardianship may be ordered in the proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of a qualified expert witness, as defined in Section 224.6, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."])

We review this detriment finding for substantial evidence. (*In re Barbara R.* (2006) 137 Cal.App.4th 941, 951.) Under this standard, we do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence, or reweigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if there is other evidence to the contrary. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.) The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the court's finding. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

B

In terminating parental rights, the juvenile court found, beyond a reasonable doubt, that the minors' continued custody by either parent would likely result in serious emotional or physical damage to the minors. Amber asserts this finding was not supported by the evidence because Ruis testified she had not met Amber in person before the permanency planning hearing, and Ruis admitted she was not aware before that day that Amber was participating in drug treatment and had negative drug tests. Ruis, however, was informed of the case within weeks of the minors' removal from their parents' custody and had been

23

kept abreast of developments in the case by the Agency's social worker throughout the proceedings. (Amber also asserts the court's finding was not supported by the evidence because the letter from the drug treatment program that was admitted into evidence at the hearing stated she enrolled in treatment on April 13, 2014. Other evidence in the record, however, refutes this assertion and makes clear the provider's letter contains a typographical error, inadvertently stating 2014 instead of 2015.)

Further, the juvenile court's finding was not based solely on Ruis's declaration. The court made the detriment finding after considering all the evidence, observing all the witnesses, including Amber, and assessing their credibility. The evidence before the court at the time of the selection and implementation hearing showed that Amber could not safely parent the minors or provide them with long-term stability. Substantial evidence supported the court's finding beyond a reasonable doubt that continued custody of the minors by either parent was likely to result in serious emotional or physical damage to the minors.

## DISPOSITION

The orders are affirmed.

McINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.

24

Filed 12/31/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.L. et al., Persons Coming Under the Juvenile Court Law. | |
| | D068464 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ13677B-C) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| AMBER L., | |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed December 21, 2015 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to California Rules of Court, rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

McINTYRE, Acting P. J.

Copies to: All parties