Filed 9/23/21  In re C.R.-H. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re C.R.-H., a Person Coming Under the Juvenile Court Law. | D078850 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J520628) |
| v. | |
| C.H., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Conditionally reversed and remanded with directions.

Vincent Uberti, under appointment by the Court of Appeal, for Defendant and Appellant.

Lonnie J. Eldridge, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

C.H. (Mother) appeals from the juvenile court's jurisdictional and dispositional orders declaring her daughter, C.R.-H. (the minor), a dependent of the court and removing her pursuant to Welfare and Institutions Code[1] section 300, subdivision (b)(1) based on the minor's positive test for amphetamine and methamphetamine at birth. Mother asserts that a reason to believe existed that the minor was an Indian child under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.), but that the ICWA inquiries by the San Diego County Health and Human Services Agency (Agency) were insufficient. The Agency asserts that it satisfied the inquiry requirements of the ICWA but concedes that its reports omit the inquiry documentation. Thus, the record is unclear as to what information the tribes received in determining that the minor was not eligible for enrollment in their respective tribes. We conditionally reverse the orders and remand the matter to allow the Agency to comply with the requirements of the ICWA.

Mother also contends that the Agency failed to adequately attempt to locate, identify, and notice potential relative caregivers for possible placement of the minor. We conclude that Mother forfeited her contention that the Agency failed to exercise due diligence in searching for potential relative caregivers and decline to address this issue on the merits.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2021,[2] Mother was taken to the emergency room complaining of abdominal pain. She gave premature birth to the minor approximately 30 minutes later. Although hospital staff encouraged Mother to provide them with contact information for relatives, she only provided

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     Undesignated date references are to 2021.

contact information for her brother and expressly noted he could only be contacted for emergency purposes. The minor tested positive for amphetamine and methamphetamine, and displayed withdrawal symptoms. Two days after giving birth, Mother tested positive for amphetamine and methamphetamine which indicated that she used drugs while at the hospital. Mother refused to identify the minor's father. Mother's ex-husband denied being the father and stated that Mother has not seen her other three children for three or four years.

Mother reported that she has Native American ancestry through the Sioux tribes but denied knowing if any of her family members were either registered or receiving services from any tribe. The maternal grandmother denied any Native American heritage in her family but reported possible Indian heritage on the paternal side of the family. The maternal grandmother was unwilling to be a placement option for the minor because of Mother's behavior and the concern that Mother "will show up to the home and cause a scene." The maternal grandmother denied the existence of other family members willing to accept placement of the minor.

The Agency filed a dependency petition under section 300, subdivision (b)(1). Mother did not appear at the January 14, detention hearing and the Agency informed the juvenile court that it could not reach her after multiple attempts. The minor remained hospitalized. The juvenile court made a prima facie finding on the petition, detained the minor in out-of-home care, which included vesting the Agency with the discretion to detain her with a relative or a nonrelative extended family member upon her release from the hospital. The court deferred findings relating to the ICWA.

On January 21, the Agency detained the minor in a licensed foster home after her discharge from the hospital. On January 25, the maternal

3

grandmother disclosed the names of the maternal grandfather and maternal great-grandfather. The maternal grandfather confirmed having Native American ancestry with the Sioux tribe. The social worker sent informal inquiry letters to 17 Sioux tribes. Citing his age and poor health, the maternal grandfather denied being available for placement of the minor and was unwilling to share the names of any relatives for placement consideration.

At the jurisdiction/disposition hearing on February 4, Mother made her first appearance by telephone and the juvenile court appointed counsel on her behalf. After Mother indicated that she would speak to the father and disclose his name to counsel, the juvenile court deferred the paternity and ICWA issues and continued the matter. At the continued jurisdiction/disposition hearing on February 24, Mother's counsel informed the court that he had been unable to reach Mother since his appointment at the prior hearing. The juvenile court set the matter for trial and continued to defer findings related to paternity and the ICWA.

On March 8, Mother was arrested and locally detained for charges relating to disorderly conduct, being under the influence, burglary, vandalism, and using false identification. Mother appeared by video at the March 22 contested jurisdiction/disposition hearing. The juvenile court continued the matter after counsel indicated that he spoke to Mother for the first time that morning.

The contested jurisdiction/disposition hearing on April 20 proceeded as a trial on the documents with Mother again appearing by video. Mother refused to name the father and the juvenile court ultimately removed Mother from the proceeding based on her disruptive behavior. The juvenile court found the allegations of the petition true by clear and convincing evidence

4

and removed the minor from Mother's care. The court also found the ICWA did not apply after noting that all tribes the Agency had inquired with responded that the minor was not eligible for enrollment. Mother timely appealed.

DISCUSSION

## I. *THE MATTER MUST BE REMANDED FOR ICWA COMPLIANCE*

In dependency proceedings, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a).) At the first appearance by a parent in any dependency case, the juvenile court must "[a]sk each participant present whether the participant knows or has reason to know the child is an Indian child" and "[o]rder the parent, . . . to complete *Parental Notification of Indian Status* (form ICWA-020)." (Cal. Rules of Court, rule 5.481(a)(2)(A), (C).)[3]

If the court or social worker has reason to believe that an Indian child is involved the social worker must, as soon as practicable, conduct further inquiry, including, but not limited to: (1) interviewing parents and extended family members; (2) contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership; and (3) contacting the tribes or any persons that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility. (§ 224.2, subd. (e)(1)-(2).) Only if this inquiry establishes reason to know the child is an Indian child, must the Agency provide notice to the tribes by registered mail of the pending proceedings and their right to intervene. (*Id.*, subd. (f).)

---

[3] Further rule references are to the California Rules of Court.

5

Mother notes that the ICWA inquiry documentation is not in the record and it is unknown what information the Agency provided to the tribes. Accordingly, Mother asserts that substantial evidence does not support the juvenile court's ICWA findings. The Agency concedes that the Agency's reports preceding this appeal omit the information obtained from the ICWA inquiry and that the juvenile court did not have this inquiry documentation when it found that the ICWA did not apply. The parties agree, and we concur, that the matter must be remanded to the juvenile court to order the Agency to file this information. The juvenile court can then review the information and determine whether further inquiry or notice is needed.

Mother asserts that the Agency failed to ask the maternal grandparents for relative contact information for ICWA purposes even though the Agency asked these individuals about relatives for placement purposes. The maternal grandmother denied the existence of other family members willing to take placement and the maternal grandfather was unwilling to share the names of relatives for placement consideration. Mother speculates that the Agency may have obtained relative contact information from the maternal grandparents had the Agency informed them that it needed relative contact information for purposes of the ICWA.

The record does not indicate whether the Agency asked the maternal grandparents for relative contact information for purposes of the ICWA. It is possible that the omitted inquiry documentation contains information on this issue. On remand, the juvenile court has a duty to review the inquiry documentation and determine whether further inquiry is needed, including asking the maternal grandparents for relative contact information.

Mother also contends that the juvenile court did not ask her about any Native American ancestry and did not receive an ICWA-020 form from her.

6

The record shows that the juvenile court failed to ask Mother about her Indian Heritage when she first appeared at the initial jurisdiction/disposition hearing on February 4. The court also failed to order Mother to complete an ICWA-020 form. Nonetheless, state laws implementing the ICWA are subject to a harmless error analysis. (*In re H.B.* (2008) 161 Cal.App.4th 115, 121.)

Mother does not argue that the juvenile court's failures prejudiced her in any way. (*In re A.L.* (2015) 243 Cal.App.4th 628, 639 [failure to comply with the ICWA provisions is reversable "only if the error is prejudicial"].) On this record, we conclude that the juvenile court's omissions were harmless because Mother told the social worker at the outset of the proceeding that she had Native American ancestry with the Sioux tribes and the Agency had contact with the maternal grandparents. On remand, the trial court is directed to determine if further inquiry with Mother and the maternal grandparents is required.

Finally, Mother argues that the Agency failed to contact the Bureau of Indian Affairs and the Secretary of the Interior. When the Agency and the juvenile court have reason to believe that the child is an Indian child within the meaning of the ICWA, the Agency is required to conduct further inquiry including "[c]ontacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in . . . ." (§ 224.2, subd. (e)(2)(B).) Here, the Agency did not need to conduct a further inquiry with the Bureau of Indian Affairs and the State Department of Social Services because Mother and the maternal grandfather claimed Indian heritage via the Sioux tribes. Mother does not argue, and nothing in the record suggests, that the Agency was

unable to obtain the names and contact information for any of the Sioux tribes.

## II. *MOTHER FORFEITED HER ARGUMENTS REGARDING THE PLACEMENT INVESTIGATION*

Upon removing the minor from Mother's custody, the Agency was required to identify and locate adult relatives for possible placement, including relatives suggested by the parents. (§ 309, subd. (e)(1).)[4] The question whether the Agency exercised due diligence under section 309 is reviewed for substantial evidence. (*In re S.K.* (2018) 22 Cal.App.5th 29, 38.) When the court finds the social worker has not used due diligence, "the court may order the social worker to exercise due diligence in conducting an investigation to identify, locate, and notify the child's relatives . . . and may require a written or oral report to the court." (Rule 5.695(e)(2).)

"When making the determination required [by Rule 5.695, subdivision] (e), the court may consider, among other examples of due diligence, whether the social worker has done any of the following: [¶] (1) Asked the child, in an age-appropriate manner and consistent with the child's best interest, about his or her relatives; [¶] (2) Obtained information regarding the location of the child's relatives; [¶] (3) Reviewed the child's case file for any information regarding relatives; [¶] (4) Telephoned, e-mailed, or visited all identified

---

4   "If the child is removed, the social worker shall conduct, within 30 days, an investigation in order to identify and locate all grandparents, parents of a sibling of the child, if the parent has legal custody of the sibling . . . .  The social worker shall provide to all adult relatives who are located . . . within 30 days of removal of the child, written notification and shall also, whenever appropriate, provide oral notification, in person or by telephone" that the child has been removed from his or her parent and an "explanation of the various options to participate in the care and placement of the child." (§ 309, subd. (e)(1)(A), (B).)

relatives;  [¶]  (5) Asked located relatives for the names and locations of other relatives;  [¶]  (6) Used Internet search tools to locate relatives identified as supports; or  [¶]  (7) Developed tools, including a genogram, family tree, family map, or other diagram of family relationships, to help the child or parents to identify relatives."  (Rule 5.695(f).)

Mother contends that the Agency did not make reasonable efforts to locate and contact potential relative caregivers, specifically noting that the Agency did not contact the minor's uncle.  She also asserts that the juvenile court did not make a due diligence "finding on the record" as required by Rule 5.695(e)(1).  Mother requests that a new hearing regarding placement be held after relatives are properly searched for, noticed, and evaluated.  The Agency asserts that it exercised due diligence in conducting its placement investigation and Mother forfeited her arguments by not raising them with the juvenile court.

The juvenile court expressly "adopt[ed] the recommendations set forth in the addendum report dated February 24, . . . making each recommendation an order of the Court."  The adopted recommendation provides:  "The social worker has used due diligence in conducting an investigation to identify, locate and notify all of the child's relatives within 30 days of the child's removal from the home of his or her parent or guardian."  Mother's counsel did not object to the adequacy of the Agency's placement investigation or to the sufficiency of the court's due diligence finding.  "A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court."  (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221.)  "Forfeiture . . . applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings."  (*Id.* at p. 222.)

9

Mother argues against forfeiture in her reply brief, stating that she raised the issue of having relatives supervise visits and this sufficiently brought relatives to the attention of the parties for purposes of placement. Mother also asserts that placement with relatives, when possible, serves the best interests of dependent minors (§ 202, subd. (a); *In re R.T.* (2015) 232 Cal.App.4th 1284, 1296), and that the minor's best interests should not be neglected because she did not explicitly raise an issue in the courtroom.

The application of the forfeiture rule is not automatic, and a reviewing court has discretion to consider forfeited claims. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) However, the "discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue." (*Ibid.*; see *id.* at pp. 1293-1294 [excusing forfeiture to reach "an important issue of law: whether a juvenile court in a dependency case may delegate to the child's legal guardian the authority to decide whether a parent may visit the child"].) The circumstances here do not outweigh the important policy reasons for the forfeiture rule and we deem the Mother's arguments regarding the adequacy of the placement investigation and the court's findings to be forfeited.

DISPOSITION

The April 20, 2021 jurisdictional and dispositional orders are conditionally reversed and the matter is remanded with directions for the Agency to promptly file its ICWA inquiry documentation. The juvenile court must then review this information and determine whether further inquiry, including asking the Mother and maternal grandparents for relative contact information, is required.

If, after further inquiry and, if required, notice, the Agency obtains information showing a reason to know that the minor is an Indian child, the court must provide notice in accordance with the ICWA. (§ 224.3, subd. (a).)

The Agency shall thereafter notify the court of its actions and file certified mail return receipts for any ICWA notices sent, together with any responses received. The court must then determine, on the record, whether the ICWA inquiry and notice requirements have been satisfied and whether the minor is an Indian child. If the court finds she is an Indian child, it is to vacate all affected orders and conduct a new jurisdiction/disposition hearing, as well as all further proceedings, in compliance with the ICWA and related California law. If the court finds the minor is not an Indian child, the court's original jurisdictional and dispositional orders may be reinstated.

McCONNELL, P. J.

WE CONCUR:

GUERRERO, J.

DO, J.