Filed 6/26/23  In re M.A. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re M.A. et al., Persons Coming Under the Juvenile Court Law. | C097037 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>L.B.,<br><br>        Defendant and Appellant. | (Super. Ct. No. STK-JD-DP-2021-0000201) |

Appellant L.B. (mother), mother of the minors, appeals from the juvenile court's order terminating parental rights and freeing the minors for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Mother contends the San Joaquin County Human Services Agency (Agency) failed to comply with the requirements of the Indian Child Welfare Act

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

of 1978 (25 U.S.C. § 1901 et seq.) (ICWA). We will conditionally affirm and remand for limited ICWA proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Because the issue on appeal is limited to compliance with the ICWA, we dispense with a detailed recitation of the underlying facts and non-ICWA related procedural history.

The minors, M.B., M.A., Jr., X.A., and H.A. (ages four, two, four months, and four months, respectively) were detained after infant H.A. was admitted to the hospital with numerous physical injuries consistent with child abuse. M.A. (father) is the father of the three younger minors.[2]

The Agency filed a dependency petition on behalf of the minors pursuant to section 300, subdivisions (a), (b), (e), (g), and (j). The Indian child inquiry form (ICWA-010) attached to the petition stated inquiry had been made of mother and there was no reason to believe the minors were Indian children.

Mother and father identified several relatives as possible placements for the minors, including maternal grandmother, paternal aunt, and paternal grandmother to half sibling M.B. According to the Agency's detention report, the names and phone numbers of those relatives were sent to social worker Sia Vang to start the emergency relative placement assessment process.

At the detention hearing on May 21, 2021, the court inquired of mother and father regarding Indian heritage, advised them of the ICWA requirements, and instructed them to complete parental notification of Indian status forms (ICWA-020). Thereafter, the parents filed completed ICWA-020 forms denying any Indian ancestry. The

---

[2] D.B., father of the eldest minor M.B., is not a party to this appeal.

September 2021 jurisdiction report confirmed the parents' denial of Indian ancestry and that there was no reason to believe the minors were Indian children.

The court took jurisdiction of the minors on October 26, 2021. During the jurisdiction hearing, the court directed the Agency to contact maternal aunt N.C. and maternal grandmother P.A. regarding visitation.

The November 2021 disposition report stated mother had six maternal siblings and half siblings and 15 paternal half siblings, and father had nine siblings. The report reiterated the previous facts regarding ICWA inquiry and again concluded there was no reason to believe the minors were Indian children.

At the February 2022 contested disposition hearing, the court bypassed father for reunification services. At the continued hearing the following month, the court terminated mother's reunification services.

The Agency's reports for April, May, July, and August 2022 either reiterated the ICWA inquiry information previously provided or stated the ICWA does not apply. At all substantive hearings from May 2022 through the September 15, 2022 section 366.26 hearing, the court adopted the Agency's recommended findings and orders but did not expressly make any ICWA findings. The court terminated parental rights on September 15, 2022.

## DISCUSSION

Mother contends the Agency failed to make an initial inquiry of available paternal or maternal relatives. She claims the Agency had access to and communicated with the maternal grandmother, the maternal aunt, and mother's other siblings, as well as the paternal great-uncle and the paternal great-grandmother and paternal aunt, both of whom helped care for and wanted placement of the minors. She also claims the juvenile court failed to ensure the Agency's compliance with the requirements of the ICWA and failed to make any ICWA findings at all.

3

The Agency concedes it had contact with several maternal and paternal relatives and did not make ICWA inquiry and that the juvenile court did not make an ICWA finding on the record. Notwithstanding its concessions, the Agency argues any error was harmless where, as here, mother made no showing that, had proper inquiry and notice been accomplished, the minors would have been found to be Indian children and the provisions of the ICWA would have applied. (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1162; *In re G.A.* (2022) 81 Cal.App.5th 355, 362, review granted Oct. 12, 2022, S276056.) As we explain, because the ICWA errors were not harmless we will conditionally affirm and remand for limited ICWA proceedings.

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' " (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) The juvenile court and the Agency have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.,* subd. (e), italics added.) Third, if that further inquiry results in a

4

reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

It is undisputed that mother and father both unequivocally denied any Indian heritage. However, it is also undisputed that a number of the minors' extended family members were not questioned about possible Indian ancestry despite being known to the Agency. For example, the Agency reported that mother had six maternal siblings and half siblings and 15 paternal half siblings, and father had nine siblings, but evidently none of those relatives were asked about their heritage. Similarly, social worker Vang was provided with names and telephone numbers for several relatives for possible placement, including maternal grandmother, paternal aunt, and paternal grandmother to half sibling M.B., but there is nothing in the record to suggest the social worker made inquiry of those relatives either. And, despite that the court directed the Agency to contact maternal aunt N.C. and maternal grandmother P.A. regarding visitation, there is no evidence of ICWA inquiry during such contacts. In short, there is nothing in the record to demonstrate the Agency made any attempt to inquire of known and, in certain cases, available extended family members. While the Agency "is not required to 'cast about' for information or pursue unproductive investigative leads" (*In re D.S., supra,* 46 Cal.App.5th at p. 1053), it is required to include in its reports a discussion of what efforts it undertook to locate and interview family members who might have pertinent information and, "[i]n the absence of an appellate record affirmatively showing the

5

court's and the agency's efforts to comply with ICWA's inquiry and notice requirements, we will not, as a general rule, conclude that substantial evidence supports the court's finding that proper and adequate ICWA notices were given or that ICWA did not apply." (*In re N.G.* (2018) 27 Cal.App.5th 474, 484; accord, *In re K.R.* (2018) 20 Cal.App.5th 701, 709.)  Here, the record makes no such affirmative showing with regard to any of the minors' extended family members.

Deficiencies in ICWA inquiry and notice are reviewed for harmless error.  Those deficiencies "may be deemed harmless error when, even if proper notice had been given, the child would not have been found to be an Indian child." (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1251.)  However, error is not presumed.  It is mother's obligation to present a record that affirmatively demonstrates error. (*In re D.W.* (2011) 193 Cal.App.4th 413, 417-418.)  Mother has done so here.  If we conclude the juvenile court did not comply with the ICWA provisions, we "reverse only if the error is prejudicial." (*In re A.L.* (2015) 243 Cal.App.4th 628, 639.)  In light of the Agency's concessions, and given the state of the record, we cannot say with certainty that there was no prejudice to any relevant tribes.

The Agency either did not take sufficient affirmative steps to investigate the minors' possible Indian ancestry or did not document its efforts to do so.  The juvenile court failed to ensure that an adequate investigation had been conducted and failed to make an ICWA finding on the record.  In the absence of evidence of the Agency's efforts to fulfill its continuing duty of inquiry, we cannot say the failure of ICWA compliance was harmless.  We agree with mother that the Agency was required to make additional efforts to inquire about possible Native American ancestry from the parents' known relatives and that remand is necessary for the Agency to inquire further.  (See § 224.2, subd. (b); see also *In re Y.W.* (2021) 70 Cal.App.5th 542, 554; *In re A.C.* (2022) 75 Cal.App.5th 1009, 1016-1018.)

6

Accordingly, we will conditionally affirm the juvenile court's order terminating parental rights, and remand the case to the juvenile court for further proceedings to address compliance with the inquiry and notice provisions of the ICWA and entry of orders regarding the applicability of the ICWA.

DISPOSITION

The juvenile court's order terminating parental rights is conditionally affirmed and the matter is remanded to the juvenile court for limited proceedings to determine compliance with the ICWA consistent with this opinion. If, at the conclusion of those proceedings, no tribe indicates the minors are Indian children within the meaning of the ICWA, then the juvenile court shall make the appropriate ICWA finding and reinstate the order terminating parental rights. If the juvenile court finds, after proper inquiry and notice, that the ICWA applies, the juvenile court shall hold such further proceedings as are appropriate, including a new section 366.26 hearing.


                                        /s/
                                        BOULWARE EURIE, J.



We concur:



      /s/
KRAUSE, Acting P. J.



      /s/
MESIWALA, J.



7