[No. B159581. Second Dist., Div. Three. Aug. 14, 2003.]

DOREECE E. ARTAL, Plaintiff and Appellant, v.
SUSAN ALLEN, Defendant and Respondent.

COUNSEL

Nada L. Edwards; Alevizon & Associates and Dennis M. Alevizon for Plaintiff and Appellant.

Moore, Winter, Skebba & McLennan, Raymond R. Moore and Arthur E. Zitsow for Defendant and Respondent.

OPINION

KLEIN, P. J.—Plaintiff and appellant Doreece E. Artal (Artal) appeals a judgment in favor of defendant and respondent Susan Allen, M.D. (Dr. Allen) based on the defense of the statute of limitations (Code Civ. Proc., § 340.5) at the initial phase of a bifurcated nonjury trial.[1]

Artal awoke after *pelvic* surgery with throat pain, which was severe and persisted. Artal knew she had been intubated for anesthesia by Dr. Allen for surgery and believed the throat pain was related to the intubation, but was unaware that the intubation had been performed in a negligent manner. Artal eventually underwent exploratory surgery, which revealed a thyroid cartilage fracture.

Prior to the exploratory surgery, Artal did not, and could not, discover the injury *and its negligent cause*. Because Artal filed suit within one year of discovering the injury and its negligent cause, and within three years of the injury, the judgment is reversed and the matter remanded to the trial court with directions to reinstate the action.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.* [2]

On May 8, 1998, Artal was admitted to Cedars Sinai Medical Center to undergo a diagnostic laparoscopy for suspected endometriosis. Dr. Allen was

---

[1] Code of Civil Procedure section 340.5 provides in relevant part: "In an action for injury ... against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."

All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

[2] This factual summary has been developed from the reporter's transcript, as well as from the briefs and the joint appendix. "While briefs and argument are outside the record, they are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party. [Citations.]" (*Franklin v. Appel* (1992) 8 Cal.App.4th 875, 893, fn. 11 [10 Cal.Rptr.2d 759]; see generally, 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 329(2), p. 371.) This principle is helpful where, as here, the briefs contain factual statements which are unsupported by the trial transcript.

the anesthesiologist for the surgery and intubated Artal for the general anesthetic. Artal was advised she might experience hoarseness and a sore throat for 24 to 48 hours after the surgery, and was instructed to call a doctor if the pain was not relieved by medication.

Immediately after the surgery when Artal awakened in the postanesthesia recovery room, she had severe throat pain. The pain was still severe 48 hours after the surgery. However, Artal waited to follow up with Dr. Brooks, her surgeon, and did not see him for two weeks.

Because the throat pain persisted and was severe, Artal, sometimes accompanied by her husband,[3] saw at least 20 specialists in the 18 months following the May 8, 1998, surgery. Artal consulted specialists in the fields of ear/nose/throat (ENT), neurology, head and neck, pulmonology, internal medicine, gastroenterology, pain, anesthesiology, psychiatry, dentistry, physical therapy and acupuncture. She was given possible diagnoses of tonsil infection, tumor or cancer, sinus infection, gastroesophageal reflux disease, a stone in the sublingual gland, injury to the cord of tympany, brain tumor, lupus, possible other autoimmune disease, emotional and/or mental problems, capillary hyperplasia, carotidynia, cryptic tonsils, asthma, costochondritis, bruxism, salivary gland inflammation, neuralgia, neuropathy, glossopharyngeal neuralgia, pectoral and/or upper back spasm, and postural irregularity.

On April 21, 1999, Artal saw Dr. Flaum, an ENT specialist, at which time she completed a medical history form stating her problem as "[p]ain in tongue, throat, neck, feeling of something in my throat all the time, recent sensation of numbness around chin (all on left side) pinching pain, *following intubation*." (Italics added.)

On May 6, 1999, Artal saw Dr. Graff-Radford, a pain specialist, and completed a pain evaluation form. In response to the question "What do YOU think is the cause of your pain?," Artal wrote, "I don't know. *I feel that some sort of trauma was caused during intubation*." (Italics added.)

On November 5, 1999, Artal underwent exploratory surgery by Dr. Burke in an attempt to determine the cause of the pain she had been suffering since the May 8, 1998 surgery. After this surgery, Dr. Burke informed Artal "that the superior cornu of the thyroid cartilage, the left side was fractured, and it was poking at a 90-degree angle at the vertebral column." Dr. Burke did not tell Artal that the pain was caused by the intubation, he did not attribute the deformed thyroid cartilage to negligence, and he did not state that Dr. Allen had been negligent.

A few days after the exploratory surgery by Dr. Burke, Artal thought about it and attributed the fracture to the intubation by Dr. Allen.

---

[3] Artal is a dentist and her husband is a physician.

## 2. *Proceedings.*

On October 27, 2000, less than one year after undergoing the exploratory surgery, Artal filed this action against Dr. Allen, alleging professional negligence.

Dr. Allen answered and raised the one-year limitations period of section 340.5 as an affirmative defense. Dr. Allen moved for summary judgment, asserting the action was time-barred because Artal discovered her injury no later than May 6, 1999, and failed to sue within one year thereof. As indicated, on May 6, 1999, Artal wrote on Dr. Graff-Radford's pain evaluation form that the pain was caused by "some sort of trauma ... during intubation."

The trial court denied summary judgment, finding "there is a triable issue of fact as to the date of discovery of the alleged negligence."

The matter proceeded to a bifurcated trial, commencing with Dr. Allen's statute of limitations defense.

## 3. *Trial court's ruling.*

After hearing the first phase of the bifurcated trial, the trial court ruled "the action is barred by the statute of limitations. The plaintiff was advised at the time of the surgery that she might experience pain for a couple of days. Her pain continued past that time and she went to see many doctors to determine the source of her pain and discomfort. [¶] On April 21, 1999 Plaintiff wrote on a form that her pain was '... following intubation.' On May 6, 1999 she indicated on a form that she submitted to Cedars Sinai that '... some sort of trauma was caused during intubation.' [¶] The complaint was not filed until October 27, 2000. [¶] The information that plaintiff had was sufficient to put a reasonable person on inquiry notice. In addition, Plaintiff is a dentist with training in hospital medicine. Her husband is an internist and he went with her to many of the doctor[s'] appointments. [¶] Plaintiff argued that while she knew she had pain, she did not know that it was caused by negligence. Yet, at the time she filed her complaint, she had never been told that her injuries were caused by negligence. In other words, plaintiff finally decided to file this action without any doctor telling her that negligence had occurred. Her decision to file was based on her own decision that negligence must have occurred. She had the facts upon which to base this suspicion within the statute of limitations. [¶] The court recognizes that plaintiff made every effort to ascertain the cause of her pain. She sought out numerous doctors in many medical fields. She did not rest until she finally had the medical answer. But, from a legal perspective, the search was too long. Plaintiff had the suspicion and she was required to file the action. This was not done in a timely fashion."

Artal filed a timely notice of appeal from the judgment.

## CONTENTIONS

Artal contends a cause of action for medical malpractice does not accrue until one discovers both the injury and its negligent cause, or through the exercise of reasonable diligence, should have discovered it (*Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93, 96–97 [132 Cal.Rptr. 657, 553 P.2d 1129]); she did not discover the negligent cause of her condition and could not reasonably identify such negligent cause until after the exploratory surgery on November 5, 1999; therefore, the complaint filed October 27, 2000, was timely.

## DISCUSSION

1. *General principles: plaintiff must file suit within one year of discovering the injury and its negligent cause.*

Section 340.5 provides "[i]n an action for injury ... against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." ■ Thus, section 340.5 contains two periods of limitation, a three-year period and a one-year period, both of which must be met. (*Rose v. Fife* (1989) 207 Cal.App.3d 760, 767–768 [255 Cal.Rptr. 440].)[4]

Under section 340.5, the three-year period is tolled " '(1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person.' The statute makes clear, however, that the one-year period is not similarly extended. Thus, regardless of extenuating circumstances, the patient must bring ... suit within one year after he discovers, or should have discovered, [the] 'injury.' (*Sanchez v. South Hoover Hospital*[, *supra*,] 18 Cal.3d [at pp.] 100–101 [132 Cal.Rptr. 657, 553 P.2d 1129] .)" (*Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 896 [218 Cal.Rptr. 313, 705 P.2d 886].)

In *Sanchez*, the Supreme Court "indicated that by common law tradition, the term 'injury,' as used in section 340.5, means both 'a person's physical condition *and* its "negligent cause." ' (*Sanchez v. South Hoover Hospital, supra*, 18 Cal.3d at p. 99, citing *Stafford v. Shultz* (1954) 42 Cal.2d 767, 776–777 [270 P.2d 1]; see also *Mock v. Santa Monica Hospital* (1960)

---

[4] There is no issue here as to Artal's compliance with the three-year provision of section 340.5. Artal filed suit less than three years after the May 8, 1998 laparoscopy.

187 Cal.App.2d 57, 64 [9 Cal.Rptr. 555]; *Brown v. Bleiberg* (1982) 32 Cal.3d 426, 433–435 [186 Cal.Rptr. 228, 651 P.2d 815], italics in original.) Thus, once a patient knows, or by reasonable diligence should have known, that he has been harmed through professional negligence, he has one year to bring his suit." (*Gutierrez v. Mofid, supra,* 39 Cal.3d at p. 896.)

The patient is "charged with 'presumptive' knowledge of his negligent injury, and the statute commences to run, once he has ' "notice or information of circumstances to put a reasonable person *on inquiry,* or *has the opportunity to obtain knowledge* from sources open to his investigation ...." ' (*Sanchez [v. South Hoover Hospital], supra,* [18 Cal.3d] at p. 101 ....) Thus, when the patient's 'reasonably founded suspicions [have been aroused],' and she has actually 'become alerted to the necessity for investigation and pursuit of her remedies,' the one-year period for suit begins. (18 Cal.3d at p. 102.)" (*Gutierrez v. Mofid, supra,* 39 Cal.3d at pp. 896–897.)

*Hills v. Aronsohn* (1984) 152 Cal.App.3d 753 [199 Cal.Rptr. 816], illustrates the principle that for the one-year limitations period to be triggered, in addition to being aware of her harm, the patient must be aware of its negligent cause. There, the patient, Hills, filed suit against Dr. Aronsohn on March 1, 1978 for negligent injection of silicone in her breasts between April and June 1966. (*Id.* at pp. 756–757.) In March 1974, Hills noticed lumps and experienced soreness in her breasts. (*Id.* at p. 756.) Hills claimed she was not aware until March 1977, after she underwent a subcutaneous mastectomy, that *negligent* silicone injections were the cause of soreness and lumps in her breasts. (*Id.* at pp. 758–759.) The trial court granted a defense motion for summary judgment on the ground the medical malpractice action was barred by the statute of limitations. (*Id.* at p. 756.)

The reviewing court found the date "Ms. Hills *could* have discovered the negligent cause is unclear from the record. Whether she could have reasonably discovered the negligent cause of her injury without submitting to surgery is therefore an unknown quantity. It is possible that, as she apparently argues, a surgeon cannot detect that negligent, as opposed to nonnegligent, silicone injections caused silicone granulomatosis without performing some type of exploratory surgery. If this is so, we cannot accept Dr. Aronsohn's position. [¶] The malpractice litigant is required to diligently pursue her claim through discovery of the cause of her injury. And if she fails to do so she faces the prospect that the action will be time barred. Carrying Dr. Aronsohn's argument to its logical conclusion would mean that in order for Ms. Hills to have demonstrated due diligence she would have had to submit to a serious operation. We refuse to hold that submitting to such drastic surgery is the sole means by which a plaintiff may make the requisite showing of diligence. It is one thing to force inquiry. But it is quite another to say that

Ms. Hills gave up her right to recover because she refused to have a mastectomy sooner. A plaintiff is not required to discover the negligent cause of her injuries at all costs to her own health and welfare. Rather, the plaintiff is only required to take all reasonable steps to protect her health. [¶] We conclude that although on March 27, 1974, Dr. Linsman reported the lumps in Ms. Hills' breasts were silicone deposits, she may not have known the lumps were anything other than the effects of nonnegligent silicone injections until March 4, 1977, when surgery was completed. She claims that was the first time the surgeon informed her that *negligent* silicone injections caused her injury. Since nothing in the record refutes her claim, a triable issue exists as to the date she could have discovered the negligent cause of her harm. Accordingly, her claim was not barred as a matter of law by the one-year limitation period." (*Hills v. Aronsohn, supra,* 152 Cal.App.3d at p. 760.)[5]

2. *Trial court erred in finding the action is time-barred; there is no substantial evidence to show Artal could have discovered the negligent cause of her harm any earlier than the November 5, 1999, exploratory surgery by Dr. Burke.*

As indicated, a patient must bring suit within one year after she discovers, or through reasonable diligence should have discovered, the injury. (§ 340.5; *Gutierrez v. Mofid, supra,* 39 Cal.3d at p. 896.) ■ Whether a plaintiff has exercised reasonable diligence necessarily depends on the facts of the individual case.

Dr. Allen's position, which the trial court adopted, is that Artal discovered her injury no later than May 6, 1999. As noted, on that date Artal saw Dr. Graff-Radford, a pain specialist, and completed a pain evaluation form. In response to the question "What do YOU think is the cause of your pain?," Artal wrote, "I don't know. *I feel that some sort of trauma was caused during intubation.*" (Italics added.)

However, this evidence merely showed that Artal suspected there was a connection between the intubation and her throat pain. It does not support the conclusion that by May 6, 1999, Artal knew, or by reasonable diligence should have known, that the throat pain was caused by professional negligence. That evidence did not materialize until the exploratory surgery on

---

[5] *Hills v. Aronsohn* went on to affirm the grant of summary judgment on the ground the plaintiff's action was barred by the three-year limitations period of section 340.5, "which terminates all malpractice liability and it commences to run when the patient is aware of the physical manifestations of her injury without regard to awareness of the negligent cause." (*Hills v. Aronsohn, supra,* 152 Cal.App.3d at p. 760.) The plaintiff admitted she experienced soreness and noticed lumps in her breasts in March 1974, four years before filing suit. (*Id.* at p. 762.) Thus, the evidence established that the plaintiff suffered the damaging effects of the malpractice more than three years before filing suit. (*Id.* at p. 763.)

November 5, 1999, which revealed the thyroid cartilage fracture, a condition Artal attributes to the intubation by Dr. Allen. There is nothing in the record to show Artal could have, through greater diligence, discovered the negligent cause of her harm any earlier than the November 5, 1999, exploratory surgery.

In fact, Artal was a model of diligence. She consulted at least 20 specialists in the 18 months following the May 8, 1998, surgery to no avail. She was given some two dozen possible diagnoses, including tonsil infection, cancer, lupus, emotional and/or mental problems and asthma. None of these diagnoses implicated Dr. Allen.

As it turned out, the necessary facts could not be ascertained without exploratory surgery. It was not until the exploratory surgery, which revealed the thyroid cartilage fracture, that Artal had reason to suspect Dr. Allen had *negligently* performed the intubation. ■ Although a malpractice litigant is required to pursue her claim diligently through discovery of the cause of her injury, Artal's duty of diligence did not extend to submitting to surgery sooner in order to discover the negligent cause of her injury. (*Hills v. Aronsohn, supra*, 152 Cal.App.3d at p. 760.)

Dr. Allen asserts the throat pain put Artal on inquiry notice of her negligent intubation claim, so as to commence the running of statute of limitations, and thereafter the specific facts necessary to establish the claim could have been developed through pretrial discovery. (See *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111 [245 Cal.Rptr. 658, 751 P.2d 923].) The flaw in this argument is that it presupposes that litigation would have been effective in revealing the information which Artal needed to support her case. However, there is nothing in the record to support the notion that Artal could have developed the necessary facts through routine pretrial discovery, such as by deposing Dr. Allen or by propounding interrogatories, or by consulting additional experts.

Further, requiring a plaintiff to sue while still ignorant of her injury *and its negligent cause* would require a plaintiff to bring a lawsuit without any objective basis for believing that malpractice had occurred. Had Artal filed suit before acquiring the information she obtained through exploratory surgery, she surely could not have prosecuted the malpractice action successfully, and it inevitably would have concluded in a summary judgment for Dr. Allen or a nonsuit. Without knowledge of the thyroid cartilage fracture, Artal could not begin to meet her burden of proving that Dr. Allen failed to exercise that degree of skill and care ordinarily used by reputable anesthesiologists in the locality. (*Quintal v. Laurel Grove Hospital* (1964) 62 Cal.2d 154, 159–160 [41 Cal.Rptr. 577, 397 P.2d 161]; BAJI No. 6.00.1 (9th ed. 2002).)

Finally, there is no merit to Dr. Allen's contention that under Artal's interpretation, the statute of limitations would theoretically never be triggered until a physician has determined the mechanism of injury. ■ Irrespective of the one-year provision of section 340.5, its three-year provision "provides an outer limit which terminates all malpractice liability and it commences to run when the patient is aware of the physical manifestations of her injury *without regard to awareness of the negligent cause.*" (*Hills v. Aronsohn, supra*, 152 Cal.App.3d at p. 760, italics added.)[6]

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to reinstate the action. Artal shall recover costs on appeal.

Croskey, J., and Aldrich, J., concurred.

A petition for a rehearing was denied September 4, 2003, and respondent's petition for review by the Supreme Court was denied October 22, 2003. Brown, J. did not participate therein.

---

[6] We express no opinion as to the merits of Artal's action. We merely hold the action was filed within the time prescribed by section 340.5.