Filed 11/30/20  In re C.F. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re C.F., Jr. et al., Persons Coming Under the Juvenile Court Law. | B302134 (Los Angeles County Super. Ct. No. CK58890) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  JENNIFER A.,  Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steff R. Padilla, Commissioner.  Dismissed in part and affirmed in part.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Tarkian & Associates and Arezoo Pichvai for Plaintiff and Respondent.

_____

On December 13, 2016, the Los Angeles County Department of Children and Family Services (DCFS) initiated juvenile dependency proceedings concerning 14-year-old C.F., Jr.; 13-year-old M.A.; 7-year-old A.A.; 7-year-old N.A.; and 6-year-old J.A. The juvenile court later declared the case was governed by the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.), and sustained an amended petition, which alleged that A.A.'s, N.A.'s, and J.A.'s presumed father (C.A.) had physically abused the five children and their mother (mother) and used narcotics, and that mother failed to protect the children from C.A. At the disposition hearing held on July 5, 2017, all five children were released to mother's custody. On June 1, 2018, the juvenile court sustained a supplemental petition alleging that mother and C.A. failed to comply with court orders, removed the children from her custody, instructed DCFS to provide mother with family reunification services, and ordered mother, inter alia, to participate in individual counseling to address case issues.

At a 12-month review hearing held on October 29, 2019 pursuant to Welfare and Institutions Code[1] section 366.21, subdivision (f), the juvenile court found that mother did not participate in individual counseling as required by the case plan,

_____

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

2

DCFS had made "active efforts" to prevent the breakup of the Indian family for the purposes of ICWA and its parallel state law provisions, and returning the children to mother's physical custody would create a substantial risk of detriment to them. The juvenile court ordered DCFS to continue to provide family reunification services to mother and scheduled an 18-month review hearing pursuant to section 366.22.

On appeal, mother challenges the active efforts and detriment findings made at the October 29, 2019 hearing. After mother filed her notice of appeal, the juvenile court held the 18-month review hearing on August 28, 2020. At that hearing, the court terminated mother's family reunification services relating to C.F., Jr. because he reached the age of majority, found that DCFS had made active efforts with respect to the other four children and that returning them to mother's custody would pose a substantial risk of detriment to them, terminated reunification services for C.F., Jr.'s four siblings, and scheduled a section 366.26 permanency planning hearing for those four children.

We conclude that mother's appeal is moot insofar as it concerns (a) C.F., Jr. and (b) the October 29, 2019 detriment finding applicable to his four siblings because, in light of the rulings and findings made at the August 28, 2020 hearing, we would be unable to provide mother effective relief as to those appellate claims. On the merits, we reject mother's challenge to the October 29, 2019 active efforts finding concerning C.F., Jr.'s four siblings because, contrary to mother's arguments, the juvenile court was not required to support that conclusion with specific and detailed findings, and mother has failed to demonstrate that substantial evidence—the applicable standard

3

of review—did not support the court's active efforts finding. Thus, we dismiss as moot part of mother's appeal and affirm the active efforts finding made as to all children except C.F., Jr.

## FACTUAL AND PROCEDURAL BACKGROUND

Although we acknowledge that this matter has a lengthy factual and procedural history, we summarize only those facts that are relevant to this appeal.

On December 13, 2016, DCFS filed a juvenile dependency petition. The petition alleged in pertinent part that jurisdiction was proper under section 300, subdivisions (a), (b)(1), and (j) on the grounds that C.A. used narcotics and physically abused mother and the five children, and that mother failed to protect the children from C.A.

At the December 13, 2016 detention hearing, the juvenile court declared that C.F., Sr. was the presumed father of C.F., Jr. and M.A., and that C.A. was the presumed father of A.A., N.A., and J.A. The juvenile court detained C.F., Jr. and M.A., and released A.A., N.A., and J.A. to mother and C.A.

On the date of the detention hearing, mother completed a form indicating she may have Indian ancestry. After DCFS gave notice of the proceedings to the Sault Ste. Marie Tribe of Chippewa Indians (Tribe), the Tribe intervened on March 14, 2017, and the juvenile court later declared that the case fell within the scope of ICWA.

On May 10, 2017, DCFS filed a first amended petition that added new allegations not pertinent to this appeal. At the detention hearing held the following day, the court released C.F., Jr. and M.A. to mother.

On July 5, 2017, the juvenile court held an adjudication and disposition hearing at which it found jurisdiction was proper

and declared the children to be dependents of the court, pursuant to section 300, subdivisions (a), (b), and (j). The court placed C.F., Jr. and M.A. in mother's custody, and placed A.A., N.A., and J.A. with mother and C.A.

On December 14, 2017, DCFS filed a supplemental petition pursuant to section 387, alleging that mother failed to comply with court orders requiring her to participate in parenting and counseling programs, and that C.A. violated court orders by continuing to abuse alcohol and failing to participate in a substance abuse program and submit to drug and alcohol testing. On December 15, 2017, the court detained the children, placed them with relatives, and authorized mother to have monitored visits with them.

On June 1, 2018, the juvenile court held an adjudication and disposition hearing on the supplemental petition. The juvenile court struck a portion of the supplemental petition alleging that mother violated court orders by failing to participate in a parenting course. The juvenile court thereafter sustained the amended supplemental petition. The juvenile court removed the children from the custody of their respective parents and ordered DCFS to provide family reunification services and monitored visits to mother.

On June 1, 2018, the court approved case plans for each of the five children that varied from one another. The case plans for C.F., Jr.; M.A.; and A.A. required mother to participate in drug and alcohol services, whereas N.A.'s and J.A.'s case plans did not. While M.A.'s case plan did not state that mother needed to complete a parenting program, C.F., Jr.'s; AA.'s; and N.A.'s case plans imposed that requirement. Only the case plans for A.A., N.A., and J.A. provided that mother had to attend individual

5

counseling sessions, and, unlike N.A.'s and J.A.'s case plans, A.A.'s case plan does not specify that these sessions are intended to address "case issues."

In a status report filed on December 3, 2018, DCFS stated that on October 3, 2018, the agency had provided mother with contact information for an organization called United American Indian Involvement in order to allow her to enroll in individual counseling sessions. DCFS also reported that on November 21, 2018, it had referred mother to the American Indian Counseling Center for individual counseling sessions.

On December 21, 2018, the juvenile court held a review hearing pursuant to section 366.21, subdivision (e) at which it ordered DCFS to continue providing family reunification services to mother.

On April 8, 2019, a DCFS social worker visited mother and asked her why she had not contacted any of the programs for which the agency had given her referrals.[2] The social worker told mother that DCFS already referred her to the American Indian Counseling Center and United American Indian Involvement, stated that both programs offered individual counseling, and provided mother with contact information for both programs.

---

[2] Mother's reply brief does not dispute any of the facts that are discussed in the textual paragraph accompanying this footnote, which facts are derived from DCFS's appellate brief. She thus impliedly concedes these facts. (See *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 (*Rudick*) [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

On May 14, 2019, the social worker again provided mother with the contact information for the two programs.

On September 18, 2019, the juvenile court held a hearing at which the court clarified that mother's case plan required her to participate in individual counseling, and continued the section 366.21, subdivision (f) review hearing initially scheduled for that date because the court needed additional time to review certain relevant evidence. At the hearing, the court observed that it had reviewed the reporter's transcript to determine "what the case plans were," and "it look[ed] like there was an error possibly." Specifically, the court noted the transcript showed that although it initially ordered "mother into a drug counseling and testing program," the court "later rescinded [its] orders and ordered mother to be in individual counseling." The court then admonished mother that if she did not participate in counseling, then it would "be a very difficult time for" her.

On October 7, 2019, DCFS filed a last minute information report. In the report, DCFS stated that on September 18, 2019, a certified addiction specialist for mother's substance abuse program confirmed that the specialist was not providing mother with mental health services to address case-related issues. DCFS further claimed that the court had ordered mother to participate in individual counseling with a "licensed mental health provider," and that the certified addiction specialist was not a licensed therapist. Furthermore, a DCFS social worker reported that on September 23, 2019, he "re-referred the mother to American Indian Counseling Center to address the Court-ordered individual counseling," and told mother via e-mail that "the substance abuse counseling in which she [was] . . . participating [was] not approved by DCFS to address the Court's order."

7

On October 29, 2019, the juvenile court held a review hearing pursuant to section 366.21, subdivision (f).[3] The court reiterated that "mother d[id] not need to do a full drug and alcohol program" because she had not been ordered to do so. On the other hand, the court did find DCFS had made "active efforts" in connection with mother's obligation to participate in individual counseling.[4] The court stated that "mother knew she needed a licensed therapist, and [this requirement] was not new to her," and expressed its frustration that mother had been "voluntarily absenting herself from visits" with the children[5] and was "not

[3] The remainder of this paragraph and the following paragraph discuss findings and rulings made at the October 29, 2019 hearing.

[4] Under ICWA and related state law provisions, before placing Indian children in foster care or seeking the termination of their parents' rights, child welfare agencies must make active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family. (See *In re A.L.* (2015) 243 Cal.App.4th 628, 637–638 (*A.L.*).)

Additionally, although the case plans for C.F., Jr.; A.A.; N.A.; and J.A. stated that mother was required to take part in a parenting program, that aspect of the case plans was not discussed at the October 29, 2019 hearing. Because the parties' briefing does not challenge that omission, we do not address it in this appeal.

[5] Mother concedes in her opening brief that during the review period that was the subject of the October 29, 2019 hearing, she missed or was late to multiple scheduled visits with the children. For instance, mother admits she attended only two of five scheduled visits between September 18 and October 4, 2019. (See *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 (*Artal*) [" '[B]riefs and argument . . . are reliable

doing the things [she] need[ed] to do to ensure if the children were returned home it would be safe." Mother's reply brief does not dispute, and thus tacitly agrees with, DCFS's contention that "by the October 29, 2019, court hearing, the mother still had not participated in individual counseling to address the case issues." (See *Rudick*, *supra*, 41 Cal.App.5th at pp. 88–90.)

The juvenile court found by clear and convincing evidence that returning the children to mother's custody would "create a substantial risk of detriment to" them. It ordered DCFS to continue to provide family reunification services to mother and scheduled a review hearing pursuant to section 366.22.

On November 7, 2019, mother appealed the findings and rulings made at the October 29, 2019 hearing.

The juvenile court ultimately held the section 366.22 review hearing on August 28, 2020.[6] The court terminated mother's family reunification services, and, with respect to all children except C.F., Jr., found: (1) DCFS had made active efforts; (2) mother had not made substantial progress toward alleviating or mitigating the causes necessitating placement; and (3) there was clear and convincing evidence that returning the four children to mother would create a substantial risk of detriment to them. The juvenile court scheduled a December 2, 2020 permanency planning hearing pursuant to section 366.26 for M.A., A.A., N.A., and J.A. As discussed further

---

indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party. [Citations.]' "].)

[6] We previously granted DCFS's request for judicial notice of the minute orders relating to the August 28, 2020 hearing. (Evid. Code, §§ 452, subd. (d), 459.)

in Discussion part A, the parties dispute whether the findings and rulings made at the August 28, 2020 hearing moot all or part of the instant appeal.

## DISCUSSION

On appeal, mother challenges the juvenile court's findings at the October 29, 2019 hearing that DCFS made active efforts and that returning the children to mother's custody would create a substantial risk of detriment to them. In particular, mother argues that the juvenile court was required to make specific and detailed factual findings regarding DCFS's active efforts and that the evidence does not support the lower court's active efforts finding. Additionally, she contends the juvenile court erred in finding that returning the children to her custody would create a substantial risk of detriment to them because a qualified expert witness did not testify at the October 29, 2019 hearing and there was no stipulation to allow expert testimony by declaration.

As a threshold matter, DCFS argues that "mother's failure to specify she was challenging the court's finding that returning the children to her custody would create a substantial risk of detriment to them in her notice of appeal renders the notice of appeal insufficient to raise that challenge on appeal." Mother's notice of appeal provides in pertinent part: "I appeal from the findings and orders of the court (specify date of order or describe order): On 10-29-19, the Court found active efforts by the Department *and set the matter for a 22 hearing*." (Italics added.)

Because the juvenile court could not have set the matter for a hearing pursuant to section 366.22 unless it rendered the detriment finding, we conclude that mother's notice of appeal encompasses her challenge to the detriment finding. (See § 366.21, subds. (f)(1) & (g)(1) ["After considering the relevant

10

and admissible evidence, the court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. . . . [¶] . . . [¶] If . . . a child is not returned to the custody of a parent or legal guardian at the permanency hearing held pursuant to subdivision (f), the court shall . . . [¶] . . . [c]ontinue the case for up to six months for a permanency review hearing . . . ."]; § 366.22, subd. (a)(1) ["When a case has been continued pursuant to paragraph (1) . . . of subdivision (g) of Section 366.21, the permanency review hearing shall occur within 18 months after the date the child was originally removed from the physical custody of his or her parent or legal guardian."]; *In re J.F.* (2019) 39 Cal.App.5th 70, 75 (*J.F.*) ["A notice of appeal shall be ' "liberally construed so as to protect the right of appeal if it is *reasonably clear* what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' "].)

Although DCFS insists "[i]t was . . . not reasonably clear from her trial counsel's argument before the juvenile court that the mother would challenge the juvenile court's finding of detriment on appeal," this argument conflates the sufficiency of mother's notice of appeal with the forfeiture doctrine. (See *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 345 ["[T]he forfeiture doctrine applies in dependency cases and the failure to object . . . on a specific ground generally forfeits a parent's right to pursue that issue on appeal [citations] . . . ."].)

11

Next, we must determine whether the rulings and findings made at the August 28, 2020 hearing render any portion of mother's appeal moot. For the reasons discussed below, we conclude that mother's appeal is moot insofar as it concerns (a) C.F., Jr. and (b) the October 29, 2019 finding that mother poses a substantial risk of detriment to the other four children. Furthermore, as explained in greater detail below, we affirm the juvenile court's October 29, 2019 finding of active efforts because that court was not required to render specific and detailed findings on that question, the substantial evidence standard governs, and mother fails to establish that the juvenile court's active efforts finding does not meet that standard.

A. **Mother's Appellate Challenges Relating to C.F., Jr. and the Detriment Finding Are Moot, Whereas Her Challenge to the Active Efforts Finding Is Not**

"As a general rule, it is a court's duty to decide ' " 'actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. ' " ' [Citation.] An appellate court will dismiss an appeal when an event occurs that renders it impossible for the court to grant effective relief. [Citation.]" (*In re N.S.* (2016) 245 Cal.App.4th 53, 58–59 (*N.S.*).) " ' "An issue is not moot if the purported error infects the outcome of subsequent proceedings." ' " (*In re E.T.* (2013) 217 Cal.App.4th 426, 436.)

DCFS contends that the juvenile court's August 28, 2020 active efforts finding and its decision to terminate reunification services moots mother's challenge to the October 29, 2019 active

efforts finding.[7]  After briefing closed, we requested supplemental briefing on whether the juvenile court's August 28, 2020 findings and orders mooted her appeal concerning (a) C.F., Jr. and (b) the detriment finding made at the October 29, 2019 hearing.

At the August 28, 2020 hearing, the juvenile court made no active efforts finding with respect to C.F., Jr., and the court terminated mother's reunification services relating to C.F., Jr. "as a matter of law because [C.F., Jr.] is 18 years old."  The court retained jurisdiction over C.F., Jr. after classifying him as a nonminor dependent.

Mother maintains that her appeal concerning C.F., Jr. is not moot because "[t]he juvenile court did not terminate jurisdiction and may retain jurisdiction until C.F., Jr.[ ] is 21." (Citing § 303, subd. (a).)  The dispositive issue is not, however, whether the juvenile court still has jurisdiction over C.F., Jr. Rather, it is whether we can offer "effective relief" to mother. (See *N.S.*, *supra*, 245 Cal.App.4th at pp. 58–59.)

As it is undisputed that C.F., Jr. has reached the age of majority, he is no longer an "Indian child" subject to the protections of ICWA and its related state law provisions.  (See *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 784 ["For purposes of ICWA, an 'Indian child' is an unmarried individual under age 18

---

[7] DCFS moved to dismiss the entirety of mother's appeal on this ground.  We elected to rule on DCFS's motion together with the merits of mother's appeal.  For the reasons discussed in this section, although we deny DCFS's motion, we dismiss aspects of mother's appeal as moot for reasons not raised in DCFS's motion but briefed in response to our requests for supplemental briefing pursuant to Government Code section 68081.

who is either a member of a federally recognized Indian tribe or is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe."]; *In re Melissa R.* (2009) 177 Cal.App.4th 24, 34 (*Melissa R.*) ["ICWA applies only when an 'Indian child' is the subject of a 'child custody proceeding,' as those terms are defined by the Act."].)  In particular, DCFS may continue C.F., Jr.'s placement in foster care without first showing that it made active efforts to prevent the breakup of the Indian family or that returning him to mother's care would likely result in serious emotional or physical damage to him.  (See *A.L.*, *supra*, 243 Cal.App.4th at pp. 638, 645, citing 25 U.S.C. § 1912(d) & Welf. & Inst. Code, § 361.7, subds. (a) & (c).)  In fact, now that C.F., Jr. has been declared a nonminor dependent and the juvenile court has terminated mother's reunification services, the lower court will instead "focus[ ] on the goals and services described in the youth's transitional independent living case plan . . . ."  (See § 366.31, subd. (c).)

Additionally, although a detriment finding made at a section 366.21, subdivision (f) review hearing could result in the termination of parental rights, the juvenile court chose not to schedule a hearing under section 366.26 for C.F., Jr.  (See § 366.26, subds. (c)(1) & (c)(2)(B)(ii) [providing that a juvenile court's detriment findings are relevant to its decision whether to terminate the rights of a parent of an Indian child]; see also § 361.6, subd. (a) ["The nonminor dependent's legal status as an adult is, in and of itself, a compelling reason not to hold a hearing pursuant to Section 366.26."].)

In short, the juvenile court's prior findings that DCFS engaged in active efforts to prevent the breakup of C.F., Jr.'s

14

Indian family and that returning him to mother would create a substantial risk of detriment to him have no apparent impact on C.F., Jr.'s future dependency proceedings.  It follows that mother's appeal regarding C.F., Jr. is moot.  (Cf. *Melissa R.*, *supra*, 177 Cal.App.4th at pp. 33–34 [holding that a mother's appellate claim that a child welfare agency failed to comply with ICWA's notice requirements was moot because the child later reached age 20 and thus was "no longer . . . an 'Indian child' who could be subject to ICWA proceedings if the orders . . . challenge[d] in this appeal were reversed"].)

Mother's challenge to the October 29, 2019 detriment finding regarding the other four children is moot as well.  At the August 28, 2020 hearing, the juvenile court once again found clear and convincing evidence that returning M.A., A.A., N.A., and J.A. would create a substantial risk of detriment to them, and scheduled a section 366.26 hearing for these four children.

"[O]rdinarily '[an] order [setting a section 366.26 hearing] is not appealable; direct appellate consideration of the propriety of the setting order may be had only by petition for extraordinary writ review of the order.' "  (See *In re S.S.* (2020) 55 Cal.App.5th 355, 370; § 366.26, subd. (*l*)(1) ["An order by the court that a hearing pursuant to this section be held is not appealable at any time unless all of the following apply:  [¶] . . . [(inter alia) a] petition for extraordinary writ review was filed in a timely manner."].)  This limitation applies to " '[a]ll court orders, regardless of their nature, [that are] made at a hearing in which a section 366.26 permanency planning hearing is set," along with "findings made at the time reunification services are terminated . . . ."  (See *A.L.*, *supra*, 243 Cal.App.4th at pp. 639–640.)  "However, the court must give the parent notice

15

of the writ requirement and a failure to do so provides good cause for allowing [an] appeal [of the order]." (See *S.S.*, *supra*, at p. 370.)

We take judicial notice of the juvenile court's records, which reveal that mother has not filed a notice of her intent to file a writ petition challenging the August 28, 2020 orders concerning the four children. (Evid. Code, §§ 452, subd. (d), 459.) Indeed, mother concedes that she did not seek appellate review of the August 28, 2020 orders.

Furthermore, each of the four August 28, 2020 minute orders includes a clerk's certificate of mailing indicating that on the date of the hearing, the following materials were mailed to mother: "Notice of entry of the above minute order of August 28, 2020 and appeal rights, notice of intent to file writ, [and] petition for extraordinary writ form(s)." (Boldface & capitalization omitted.) Mother does not claim the juvenile court failed to provide adequate notice of the writ requirement. Thus, the deadline for mother to seek writ relief has expired, and she will be unable to seek appellate review of the August 28, 2020 detriment finding in the future.[8] (See *A.L.*, *supra*,

---

[8] Mother suggests in her supplemental briefing that a reversal of the October 29, 2019 detriment finding would automatically invalidate the August 28, 2020 orders and findings. Yet, mother does not cite any authority establishing she may circumvent the statutory requirement to seek writ relief to be able to challenge an order setting a section 366.26 hearing. (See also *A.L.*, *supra*, 243 Cal.App.4th at p. 639 [emphasizing the importance of section 366.26, subdivision (*l*)(1)'s limitation on appellate relief as it "ensures that challenges to findings made at the time reunification services are terminated are resolved expeditiously, and do not interfere with later proceedings"].)

16

243 Cal.App.4th at pp. 639–640 [holding that a mother was barred from challenging an active efforts finding made in an order setting a section 366.26 hearing because she did not contest it via a writ petition and she did "not allege defective notice of her right to obtain review" of that order]; Cal. Rules of Court, rule 8.450(e)(4)(B) ["[T]he notice of intent must be filed within 12 days after the date the clerk mailed the notification."].)

Furthermore, even if we reversed the finding made at the October 29, 2019 hearing that returning the four children to mother's custody would create a substantial risk of detriment to them, the August 28, 2020 detriment finding alone would "constitute a sufficient basis for termination of parental rights" if "it is likely the child[ren] will be adopted," unless a specific statutory exception applies (e.g., the court finds a "compelling reason" for determining that termination would be detrimental to the children).  (See § 366.26, subd. (c)(1).)  In light of that fact, and the fact that mother fails to explain how she could nonetheless obtain effective relief on her challenge to the October 29, 2019 detriment finding, we conclude that appellate claim is moot.

Next, DCFS argues that the August 28, 2020 active efforts finding and the order terminating reunification services moot mother's appeal of the October 29, 2019 active efforts finding concerning M.A., A.A., N.A., and J.A.  This argument is unavailing.

Section 366.26, subdivision (c)(2)(B)(i) provides in pertinent part:  "The court shall not terminate parental rights if:  [¶] . . . [¶] [i]n the case of an Indian child:  [¶] . . . [a]t the hearing terminating parental rights, the court has found that active

17

efforts were not made as required in Section 361.7."**9** (§ 366.26, subd. (c)(2)(B)(i).) This provision "explicitly allows the issue [of whether the agency made active efforts] to be addressed at the permanency planning hearing" held under section 366.26, even though the juvenile court would have already addressed the issue at prior review hearings. (See *A.L.*, *supra*, 243 Cal.App.4th at pp. 640–641.) Further, section 361.7 does not place any temporal limitation on the juvenile court's active efforts analysis at the section 366.26 hearing, meaning that it can include time periods preceding the one covered by the August 28, 2020 review hearing. (See § 361.7, subd. (a); see also *A.L.*, *supra*, 243 Cal.App.4th 628, 642–645 [considering the child welfare agency's conduct "throughout the proceedings" to determine whether it made "active efforts" for the purposes of sections 361.7 and 366.26, subdivision (c)(2)(B)(i)].) As a consequence, the juvenile court's prior active efforts finding is relevant to the analysis required by section 366.26, subdivision (c)(2)(B)(i).

---

**9** Section 361.7, subdivision (a) requires that "a party seeking an involuntary foster care placement of, or termination of parental rights over, an Indian child . . . provide evidence to the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." (§ 361.7, subd. (a).) Subdivision (b) in turn provides: "What constitutes active efforts shall be assessed on a case-by-case basis. The active efforts shall be made in a manner that takes into account the prevailing social and cultural values, conditions, and way of life of the Indian child's tribe. Active efforts shall utilize the available resources of the Indian child's extended family, tribe, tribal and other Indian social service agencies, and individual Indian caregiver service providers." (*Id.*, subd. (b).)

18

Because reversal of the October 29, 2019 active efforts finding may affect whether the juvenile court decides to terminate mother's parental rights over M.A., A.A., N.A., and J.A., that aspect of her appeal is not moot.

For these reasons, we dismiss as moot mother's challenges concerning (a) C.F., Jr. and (b) the October 29, 2019 detriment finding relating to C.F., Jr.'s four siblings. We thus next reach the merits of mother's claim that the juvenile court erred in finding at the October 29, 2019 hearing that DCFS made active efforts to reunite her with M.A., A.A., N.A., and J.A.

## B. The Juvenile Court Did Not Err in Failing to Make Specific and Detailed Findings Regarding DCFS's Active Efforts

Mother argues that the juvenile court erred in failing to make "specific" findings regarding DCFS's active efforts, and that the court instead "merely recited 'active efforts' had been made, without detail" and "did not make the second half of the finding that they were unsuccessful."[10] Mother claims that Title 25 United States Code section 1912(d); 25 Code of Federal

_____

[10] Although the juvenile court did not explicitly find that DCFS's active efforts were unsuccessful, that finding is implicit in the court's conclusion that returning the children to mother's custody "would create a substantial risk of detriment to the child[ren], creating a continued necessity for and appropriateness of the current placement." (See Discussion part C, *post* [holding that the substantial evidence standard applies to the active efforts finding]; *In re S.R.* (2020) 48 Cal.App.5th 204, 219 [" ' " '[Under the substantial evidence standard,] we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court[.]' " ' "].)

Regulations part 23.120(a) and (b); Welfare and Institutions Code section 361.7, subdivision (a); and California Rules of Court, rule 5.485(c) obligated the juvenile court to make specific and detailed findings. Thus, mother raises a legal question that is subject to de novo review. (See *In re R.C.* (2011) 196 Cal.App.4th 741, 748 ["[T]he proper interpretation of a statute and the application of the statute to undisputed facts are questions of law, which we review de novo."]; *Hoitt v. Department of Rehabilitation* (2012) 207 Cal.App.4th 513, 522 (*Hoitt*) ["Issues of law[,] . . . including the interpretation of applicable statutes or regulations, are for the courts to resolve de novo."]; *In re William M.W.* (2019) 43 Cal.App.5th 573, 583 (*William M.W.*) ["We independently review interpretations of California Rules of Court, applying the usual rules of statutory construction."].)

None of the aforementioned provisions explicitly states that the juvenile court shall make specific and detailed findings regarding the active efforts undertaken by a child welfare agency. Title 25 United States Code section 1912(d) simply provides that "[a]ny party seeking to effect a foster care placement of, or termination of parental rights" bears the burden of showing that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family" and that those efforts proved to be unsuccessful. (See 25 U.S.C. § 1912(d).) In turn, 25 Code of Federal Regulations part 23.120(a) requires the juvenile court to find that active efforts have been made but proved to be unsuccessful at preventing the breakup of the Indian family before it may order an involuntary foster care placement or the termination of parental rights, and subdivision (b) provides that "[a]ctive efforts must be documented in detail *in the record.*" (See 25 C.F.R. part

23.120(a) & (b) (2019), italics added.)  Section 361.7, subdivision (a) essentially restates Title 25 United States Code section 1912(d)'s and 25 Code of Federal Regulations part 23.120's requirements.  (§ 361.7, subd. (a).)

Additionally, although California Rules of Court, rule 5.485(c) further expounds on the meaning of "active efforts" and reiterates that "[t]he active efforts must be documented in detail in the record," it does not state that a juvenile court must make specific and detailed findings concerning an agency's active efforts.  (See Cal. Rules of Court, rule 5.485(c) ["These active efforts must include affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite the child with his or her family, must be tailored to the facts and circumstances of the case, and must be consistent with the requirements of Welfare and Institutions Code section 224.1(f)."].)

We cannot "rewrite" these provisions "to conform to an assumed intention which does not appear from [their] language." (See *People v. Haney* (1984) 156 Cal.App.3d 109, 115 [construing a statute]; see also *Hoitt, supra*, 207 Cal.App.4th at p. 523 ["Rules of statutory construction govern our interpretation of regulations promulgated by administrative agencies."]; *William M.W., supra*, 43 Cal.App.5th at p. 583 [holding that "the usual rules of statutory construction" apply to the California Rules of Court].)

Mother argues that we should impose specific and detailed findings requirement because an appellate court could not otherwise conduct a "meaningful" review of an active efforts finding.  This assertion is without merit, given that the Court of Appeal has had no difficulty reviewing the record evidence to determine whether to uphold active effort findings.  (See, e.g., *A.L., supra*, 243 Cal.App.4th at pp. 636–637, 642–645 [concluding

21

that "[i]t [was] clear from the record that the services provided to [the mother] constituted active efforts," even though the juvenile court did not even make an active efforts finding at the hearing in question]; *C.F. v. Superior Court* (2014) 230 Cal.App.4th 227, 237, 239–242 (*C.F.*) [affirming an active efforts finding that lacked detail and specificity].)

Mother's reliance on a Montana Supreme Court decision is not well-founded. (See *In re B.Y.* (2018) 393 Mont. 530, 534–535.) First, it is not authoritative precedent as to the interpretation of federal or California law. (See *Wang v. Nibbelink* (2016) 4 Cal.App.5th 1, 19 ["While cases from other states are not binding on us [citation], California courts may adopt other states' construction of uniform laws to promote consistency."]; *People v. Mays* (2009) 174 Cal.App.4th 156, 164–167 [stating, in the course of addressing a federal and state due process claim, that "we are not bound by cases from other states"].) Second, it rests on the unexplained assumption that ICWA obligates juvenile courts to make specific and detailed active efforts findings, a premise we have already rejected.[11] Additionally, the other decisions she cites for this specific and detailed findings requirement are wholly inapposite. (Citing *Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 634 [interpreting a statute that

---

[11] Mother also cites an unpublished decision from the Supreme Court of Alaska. We decline to consider this case because it is not citable authority. (See *Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 287 ["While citing unpublished *federal* opinions does not violate the California Rules of Court [citation], there is no such allowance for unpublished opinions of other *state* courts. We decline to consider [an unpublished opinion from a Delaware State Court of Chancery]."].)

22

explicitly requires a trial court to issue a " 'specification of reasons' " if it decides to grant a new trial motion]; *C.S. v. Superior Court* (2018) 29 Cal.App.5th 1009, 1028–1029 [holding that "[p]rinciples of due process" required the juvenile court to include a statement of reasons with an order to transfer the matter to "adult/criminal court"].)

For these reasons, we hold that the juvenile court did not err in failing to make specific and detailed findings supporting its conclusion that DCFS made active efforts to prevent the breakup of the Indian family.

## C. The Substantial Evidence Standard of Review Applies to Mother's Challenge to the Evidentiary Sufficiency of the Juvenile Court's Active Efforts Finding

Before reaching the merits of mother's challenge to the sufficiency of the evidence supporting the juvenile court's October 29, 2019 active efforts finding, we must determine the applicable standard of review. Mother relies upon a Fourth District decision holding that this issue is a question of law that we decide independently, (citing *A.L.*, *supra*, 243 Cal.App.4th at p. 639), whereas DCFS contends the First District correctly adopted the substantial evidence standard. (Citing *C.F.*, *supra*, 230 Cal.App.4th at pp. 238–239.)

*A.L.*'s holding rests on the premise that de novo review is appropriate because " '[w]hether active efforts were made is a mixed question of law and fact.' " (See *A.L.*, *supra*, 243 Cal.App.4th at pp. 638–639.) Conversely, *C.F.* reasoned that the juvenile court's active efforts inquiry is analogous to its decision regarding whether the child welfare agency provided reasonable reunification services, and that a reasonable services

23

finding is subject to substantial evidence review on appeal. (See *C.F.*, *supra*, 230 Cal.App.4th at p. 239.) We find *C.F.*'s reasoning persuasive.

We acknowledge there is an ongoing dispute as to whether a child welfare agency's duty to make active efforts is more rigorous than its generally applicable duty to offer reasonable reunification services. (See *A.L.*, *supra*, 243 Cal.App.4th at p. 643 [noting that the Bureau of Indian Affairs has issued guidance arguably suggesting that the active efforts standard is higher than the standard applicable to reunification services, but declining to take a position on this issue].) Regardless of whether that is the case, we conclude that the juvenile court's active efforts analysis is sufficiently akin to the reasonable reunification services inquiry that the two should be reviewed under the same appellate standard. Specifically, in order to determine whether the child welfare agency made active efforts or offered reasonable services, the juvenile court must conduct a fact-intensive assessment of the circumstances of the case.[12] Because the juvenile court is in the best position to undertake that assessment, the deferential substantial evidence standard is appropriate. (Cf. 27A Cal.Jur.3d (2019) Delinquent and Dependent Children, § 491 ["[In a juvenile criminal adjudication

---

[12] (See *A.L.*, *supra*, 243 Cal.App.4th at p. 643 [noting that " ' "[t]he adequacy of reunification plans and the reasonableness of [the Agency's] efforts [in an ICWA case] are judged according to the circumstances of each case," ' " third bracketed insertion added]; *In re D.N.* (Oct. 27, 2020, B302910) ___ Cal.App.5th ___, ___ [2020 Cal.App.Lexis 1016, at p. *40, & fn. 19] [observing that reasonable services have been offered if they " 'were reasonable under the circumstances' "].)

24

proceeding], as in any other criminal appeal, a reviewing court is in no position to weigh any conflicts or disputes in the evidence."].)

## D. Substantial Evidence Supports the Juvenile Court's Finding that DCFS Made Active Efforts

To satisfy its obligation to make active efforts, " '[t]he [child welfare a]gency "must make a good faith effort to develop and implement a family reunification plan.  [Citation.]  '[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . .' " ' " (*A.L.*, *supra*, 243 Cal.App.4th at p. 638.) "These active efforts must include affirmative, active, thorough, and timely efforts, intended primarily to maintain or reunite the child with his or her family . . ." (Cal. Rules of Court, rule 5.485(c)), including the identification of "appropriate services" and "community resources" for the Indian family. (See § 224.1, subds. (f)(2) & (f)(8).)

Under the substantial evidence standard applicable to an appellate challenge to an active efforts finding, " ' " 'we review the record in a light most favorable to the judgment and must uphold the trial court's findings unless it can be said that no rational factfinder could reach the same conclusion.' " ' " (*C.F.*, *supra*, 230 Cal.App.4th at p. 239.)

Mother claims the juvenile court's active efforts finding is not supported by substantial evidence because:  (1) DCFS "did not engage in any effort at all to clarify the [case] plan[s]," which "were confusing and internally inconsistent"; (2) DCFS

rejected mother's certified addiction specialist because the agency erroneously believed the court had ordered mother to participate in individual counseling with a licensed mental health provider; and (3) "DCFS continued to oppose and not approve mother's participation in the methadone program," and "did not determine if there was another program which would incorporate the physician-approved methadone treatment mother had been receiving for years." None of these arguments is persuasive.

We acknowledge that the case plans for M.A., A.A., N.A., and J.A. could have been better written. Mother correctly observes that "[n]o two case plans were identical" and they contained numerous inconsistencies and vague and ambiguous instructions, including the fact that only A.A.'s, N.A.'s, and J.A.'s case plans had an individual counseling requirement, and that only N.A.'s and J.A.'s case plans stated that the individual counseling was intended to address case issues. Nonetheless, if mother believed that any aspect of these case plans required clarification and/or modification, then it was incumbent on mother's counsel to seek relief from the juvenile court.[13] (See Cal. Rules of Court, rule 5.660(d) ["Every party in a dependency proceeding who is represented by an attorney is entitled to competent counsel. [¶] . . . [¶] Attorneys or their agents are expected to meet regularly with clients, . . . to contact social workers and other professionals associated with the client's case,

---

[13] It appears that prior to the October 29, 2019 hearing, mother's counsel did not discharge that obligation. Rather, the juvenile court intimated at the September 18, 2019 hearing that it discovered "there was an issue as to . . . what the case plans were" when it "read the transcript" of the hearing at which it had imposed the case plans.

[and] to work with other counsel and the court to resolve disputed aspects of a case without contested hearing."].) Mother does not cite any authority establishing that ICWA and/or its related state law provisions shift this duty from her counsel to DCFS. (See *J.F., supra*, 39 Cal.App.5th at p. 79 ["The juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error.' [Citations.] ' "Appellate briefs must provide argument and legal authority for the positions taken." [Citation.]' "].)

Second, although we agree with mother that the case plans did not require that her individual counseling sessions be conducted by a licensed mental health provider,[14] we nonetheless uphold the juvenile court's active efforts finding. The active efforts standard does not require perfection on the part of the child welfare agency; rather, it requires " ' "a good faith effort to develop and implement a family reunification plan." ' " (See *A.L., supra*, 243 Cal.App.4th at p. 638; see *id.* at p. 645 [affirming an active efforts finding even though "the Agency might have done more to assist" the mother].) While " 'merely draw[ing] up a reunification plan and leav[ing] the mother to use her own resources to bring it to fruition' " would fall short of that standard, " 'provid[ing] the mother with the resources necessary to achieve the goals of her case plan' " is sufficient. (See *C.F., supra*, 230 Cal.App.4th at p. 240.)

The December 3, 2018 status report shows that between October and November 2018, DCFS provided mother with the

_____

[14] Mother maintains "[t]his case arose because of domestic violence and substance abuse [citation], not mental health issues," but does not claim the juvenile court erred in ordering her to participate in individual counseling.

contact information for United American Indian Involvement to allow her to enroll in its counseling sessions, and referred her to the American Indian Counseling Center. Furthermore, it is undisputed that on April 8, 2019, the agency told mother that she had already been referred to these programs, informed her that they offered individual counseling, and provided her with contact information for them. (See fn. 2 and its accompanying paragraph, *ante*.) There is also no dispute that DCFS provided her with the programs' contact information once again on May 14, 2019. (See *id*.) In addition, the October 7, 2019 last minute information report indicates that DCFS re-referred mother to the American Indian Counseling Center on September 23, 2019.

Applying the deferential substantial evidence standard, we conclude that DCFS provided mother with the resources necessary to satisfy the individual counseling requirement, and thus discharged its obligation to make active efforts to prevent the breakup of the Indian family. That mother failed to utilize these resources does not negate the adequacy of the agency's efforts. (See *C.F.*, *supra*, 230 Cal.App.4th at p. 242 [upholding an active efforts finding because, "despite the impediments caused by Mother's continued failure to comply with her case plan, the Agency made some affirmative efforts to assist Mother" in doing so].)

Mother's failure to participate in the individual counseling programs is thus consistent with her lack of response to DCFS's efforts to reunify her family and her apparent lack of interest in this case. Mother did not attend the October 29, 2019 and August 28, 2020 review hearings, even though the custody of her

children and her parental rights were at stake.[15]  Furthermore, evidence in the record shows that shortly before the children were detained on December 15, 2017, the children were hungry and lived in an unclean home, the children had failed to attend school for months, and, after the family was evicted from their home, mother failed to attend meetings with the wraparound team and refused a hotel voucher because she wanted to stay at a better hotel.[16]  Mother also missed at least five scheduled drug tests during the pendency of this case.  In addition, during the review period covered by the October 29, 2019 hearing, she repeatedly missed or was late to scheduled visits with the children, and on the few occasions when mother did visit the children during that period, she often did not stay for the time allotted for these visits.

Third, although mother also complains that "DCFS penalized [her] [by] requiring her to participate in an unrequired,

---

[15]  (See § 366.21, subds. (f)(1) & (g)(4) [providing that at the 12-month review hearing, "the court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment" to the children, and that if the child is not returned at the hearing, the court may schedule a hearing under section 366.26]; § 366.22, subds. (a)(1) & (a)(3) [provisions governing 18-month review hearings, which are similar to section 366.21, subdivisions (f)(1) and (g)(4)].)

[16]  We derive the facts included in the textual sentence accompanying this footnote and in the following two sentences from admissions made in mother's opening brief.  (See *Artal*, *supra*, 111 Cal.App.4th at p. 275, fn. 2.)

29

full drug and alcohol program," this purported misconduct on the part of DCFS has no bearing on the propriety of the juvenile court's active efforts finding. Given that the juvenile court clarified at the October 29, 2019 hearing that it had not ordered mother to participate in a full drug and alcohol program, the agency's efforts relating thereto could not have formed the basis of the active efforts finding. Furthermore, although mother's briefing on this point is not altogether clear, she seems to argue that DCFS should have determined whether her therapy sessions with a certified addiction specialist satisfied the case plans' individual counseling requirement. We reject that contention because as discussed earlier in this section, DCFS did not have to explore every conceivable means by which she could achieve the goals set forth in the case plan, but was simply required to provide her with the resources necessary to do so. (See *C.F.*, *supra*, 230 Cal.App.4th at p. 240.)

Accordingly, mother has failed to overcome the presumption of correctness afforded to the juvenile court's October 29, 2019 active efforts finding with regard to M.A., A.A., N.A., and J.A. (See *J.F.*, *supra*, 39 Cal.App.5th at p. 79 ["The juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error.' [Citations."].)

## DISPOSITION

For the foregoing reasons, we deny the Los Angeles County Department of Children and Family Services's motion to dismiss as to mother's challenge to the juvenile court's active efforts findings made at the October 29, 2019 hearing; affirm the juvenile court's active efforts findings made at the October 29, 2019 hearing in case Nos. CK58890D, CK58890G, CK58890H, and CK58890I; and dismiss the remainder of mother's appeal as moot.

NOT TO BE PUBLISHED.


BENDIX, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.