Filed 4/23/21  In re B.D. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re B.D., a Person Coming Under the Juvenile Court Law. | C092532 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.D.,<br><br>Defendant and Appellant. | (Super. Ct. No. STK-JV-DP-2017-0000335) |

J.D., father of the minor, challenges the juvenile court's order terminating parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  He contends the juvenile court and the San Joaquin County Human Services Agency

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

(Agency) failed to comply with the requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). We will reverse and remand for limited ICWA proceedings.

## BACKGROUND

Because the sole issue on appeal is ICWA compliance, a detailed recitation of the non-ICWA related facts and procedural history is unnecessary to our resolution of this appeal.

In July 2017, the Agency filed a dependency petition on behalf of the minor pursuant to section 300, subdivisions (b) and (g). The petition alleged failure to protect the minor due to mother's history of substance abuse, her admitted use of drugs while pregnant with the minor, and her failure to obtain prenatal care during her pregnancy. At the minor's birth, both mother and the minor tested positive for amphetamines, opiates, and heroin, and the minor exhibited severe symptoms of drug exposure requiring intensive treatment and care in the neonatal intensive care unit. The petition also alleged mother participated in substance abuse treatment programs in the past but was unable to adequately resolve her substance abuse issues. Mother identified J.D. as the minor's father, but J.D. was neither present at the minor's birth nor did he sign a declaration of paternity. The maternal relatives identified J.P. as another potential father, but J.P.'s whereabouts were unknown. Mother had four other children who were not in her care, three of which were J.P.'s children. J.D. had full custody of the remaining child, his son.

Mother informed the Agency that she had no known Indian ancestry, and subsequently filed a parental notification of Indian status to that effect. On July 5, 2017, J.D. informed the Agency there may be Indian heritage on his side of the family, possibly Cherokee or Blackfoot or "some other tribe in Tennessee."

On July 19, 2017, the court sustained the allegations in the petition, adjudged the minor a dependent of the juvenile court, found the ICWA did not apply as to mother, and

ordered paternity testing as to J.D. During a hearing the following day at which father failed to appear, the court appointed counsel for mother, inquired about her possible Indian heritage, and advised her about the ICWA requirements, providing her with the ICWA-020 form.

Neither parent appeared at the disposition hearing on November 1, 2017. The court adopted the Agency's recommended findings and orders, bypassed mother for reunification services, and set the matter for a section 366.26 hearing.

On December 7, 2017, the Agency filed a notice of child custody proceeding for Indian child (ICWA-030 form). The ICWA notice contained information regarding the mother's name(s), current address, birthdate and birth place; J.D.'s names(s), current address, birthdate and birth place, and potential tribal affiliation; limited information about the maternal grandparents and great-grandparents, and no information about the paternal grandparents or great-grandparents. The notices were sent to the Bureau of Indian Affairs (BIA), the Blackfeet Tribe of the Blackfeet Reservation of Montana, the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians in Oklahoma.

On January 24, 2018, the court found J.D. to be the biological father of the minor and appointed counsel for him. When the court asked J.D. if he had any Indian heritage, J.D. responded: "Very little. [¶] . . . [¶] I just know my mom used to tell me a little bit of Black Foot and a little bit of something else." The court set the matter for a supplemental disposition hearing, vacated the previously scheduled section 366.26 hearing, and ordered the Agency to prepare a supplemental disposition report. J.D. signed a parental notification of Indian status indicating possible membership of, or eligibility for membership in, the "Blackfoot" tribe.

On February 6, 2018, the Agency filed a declaration of efforts to identify tribal affiliation and confirmed ICWA notices were sent to the BIA, which did not respond, and to the four tribes, two of which had not responded and the remaining two of which

3

responded in writing that the minor was not an Indian child for purposes of the ICWA. In particular, the Blackfeet Tribe of Montana indicated a blood quantum of one-quarter Blackfeet blood was required for enrollment and the minor was neither domiciled on the Blackfeet Indian reservation nor eligible for enrollment. The Eastern Band of Cherokee Indians responded that the minor was neither registered nor eligible to register as a member of the tribe.

The February 2018 supplemental disposition report stated the ICWA did not apply based on mother's July 2017 representation of no Indian ancestry, J.D.'s representations of possible Cherokee and Blackfoot heritage, the ICWA notices sent on January 24, 2018, and the Agency's declaration of efforts to identify tribal affiliation indicating the minor was not an Indian child for purposes of the ICWA.

On March 21, 2018, the Agency filed a response from the Cherokee Nation stating the minor was not an Indian child.

On March 22, 2018, the court ordered J.D. to cooperate with the Agency in providing a family history interview.

The May 2018 status review report reiterated the ICWA information contained in the February 2018 supplemental disposition report and the Agency requested that the court make a finding that the ICWA does not apply. The report set forth information gleaned during a home visit with J.D., including that J.D. lived with his nephew and his nephew's wife and their five children, and that he grew up in Hanford, California with his mother and four older sisters, but his father left when he was two years old. The report also noted the whereabouts of the paternal grandparents was unknown.

At the review hearing on May 2, 2018, the court adopted the Agency's recommended findings and orders contained on pages 12 to 14 of the status review report (which did not include ICWA findings), continued the minor's out-of-home placement with the maternal grandmother, and ordered reunification services for J.D.

On November 7, 2018, the court was informed of mother's death.

4

On November 28, 2018, the court was informed that J.D. had lost his job, was no longer living where he had been living and his whereabouts were unknown, and he was possibly using illegal substances, as evidenced by the fact that he requested help from his attorney with drug treatment.

In its December 2018 status review report, the Agency reiterated the ICWA information provided in the two previous reports, stated there was "no reason to believe the minor is an Indian child" within the meaning of the ICWA, and again requested that the court make a finding that the ICWA does not apply. The Agency also recommended that the court terminate J.D.'s reunification services, set the matter for a section 366.26 hearing, and designate a permanent plan of adoption for the minor.

At the January 24, 2019 contested review hearing, the court terminated J.D.'s reunification services, adopted the Agency's recommended findings and orders (which did not include any ICWA findings), and set the matter for a section 366.26 hearing.

The status review report reiterated the previous ICWA information provided to the court and noted the Agency's prior request for a finding that the ICWA does not apply. The Agency also requested that the court issue an order sustaining all prior orders.

On May 16, 2019, the Agency filed a supplemental petition on behalf of the minor pursuant to section 387 alleging the maternal grandmother's living situation posed a substantial risk of harm to the minor and her sibling despite the fact that the maternal grandmother had previously been given a corrective action plan. The minor and her sibling were removed from the maternal grandmother's home. The supplemental petition was later amended, and the allegations sustained by the juvenile court.

The May 2019 section 366.26 report reiterated the ICWA information in the prior reports, as well as the Agency's request that the court make a finding that the ICWA does not apply. The Agency recommended that the court find the minor adoptable and terminate parental rights.

Between May 17, 2019 and August 20, 2019, J.D. filed three petitions pursuant to section 388 seeking to reinstate his reunification services. The court denied the petitions.

The Agency's September 2019 section 366.26 report and its October 2019 status review report reiterated the previously reported ICWA information and request for a finding that the ICWA does not apply "if it has not done so already," and reiterated its recommendation that the court terminate parental rights with adoption as the permanent plan.

After several continuances, the section 366.26 hearing commenced on August 11, 2020. Father did not attend. Finding the minor adoptable, the court found no exception to adoption existed and terminated parental rights. The court made no ICWA findings or orders.

## DISCUSSION

J.D. contends the Agency failed to comply with the ICWA requirements by failing to inquire of all known paternal relatives about possible Indian heritage, to include known or reasonably ascertainable information about those relatives in the ICWA notices, or to include in its reports a discussion of its efforts to contact the paternal relatives. He further contends the juvenile court failed to make any findings as to him regarding the applicability of the ICWA. As we explain, the matter must be remanded for further limited ICWA proceedings.

ICWA's purpose is to protect the interests of Indian children and promote the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912; *In re Isaiah W.* (2016) 1 Cal.5th 1, 7-8.) The juvenile court and the Department have "an affirmative and continuing duty to inquire" whether a child is, or may be, an Indian child. (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a); see *In re K.M.* (2009) 172 Cal.App.4th 115, 118-119.) If, after the petition is filed, the

juvenile court knows or has reason to know that an Indian child is involved (25 U.S.C. § 1912(a)), notice of the pending proceeding and the right to intervene must be sent to the tribe or the BIA if the tribal affiliation is not known. (See §§ 224.2, subds. (d) & (f), 224.3, subds. (a)-(g); Cal. Rules of Court, rule 5.481(b); *In re Robert A.* (2007) 147 Cal.App.4th 982, 989.) "At that point, the social worker is required, as soon as practicable, to interview the child's parents, extended family members, the Indian custodian, if any, and any other person who can reasonably be expected to have information concerning the child's membership status or eligibility." (*In re Michael V.* (2016) 3 Cal.App.5th 225, 233; see Cal. Rules of Court, rule 5.481(a)(4)(A); § 224.2, subd. (b).)

ICWA notices must include all the following information, if known: the child's name, birthplace, and birth date; the name of the tribe in which the child is enrolled or may be eligible for enrollment; names and addresses of the child's parents, grandparents, great-grandparents, and other identifying information; and a copy of the dependency petition. (§ 224.3, subd. (a)(5)(A)-(D); *In re Mary G.* (2007) 151 Cal.App.4th 184, 209.)

Here, mother claimed no known Indian ancestry. J.D. initially informed the Agency that he might have Indian heritage on his side of the family through the Cherokee Tribe, the Blackfoot Tribe, or "some other tribe in Tennessee." Based on those representations, the Agency sent ICWA notices to the BIA and four tribes (the Blackfeet Tribe of the Blackfeet Reservation of Montana, the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians in Oklahoma). The notices contained information about mother, the maternal relatives, and father, but nothing about the paternal relatives. After the ICWA notices were sent to the tribes, J.D. confirmed in a response to the court's inquiry and in his parental notification of Indian status that he had possible Indian ancestry through the "Blackfoot" tribe.

In February 2018, the Agency concluded the ICWA did not apply based on mother's representation, J.D.'s representations of possible Cherokee and Blackfoot

7

heritage, the ICWA notices sent to the relevant tribes, and the Agency's declaration of efforts to identify tribal affiliation indicating the minor was not an Indian child for purposes of the ICWA. Thereafter, and throughout the remainder of the proceedings, the Agency reiterated its conclusion and repeatedly requested that the court make a finding that the ICWA does not apply. That is, the Agency provided no additional information that it attempted to make inquiry of J.D.'s extended family, notwithstanding the May 2018 report revealing information obtained by the social worker that the whereabouts of J.D.'s paternal grandparents was unknown but J.D. lived with his nephew and his nephew's wife and their five children, and he grew up in Hanford, California with his mother and four older sisters.

The agency's duty of ICWA inquiry extends to the minor's extended family, if known. (§ 224.2, subd. (b); Cal. Rules of Court, rule 5.481(a)(4).) Here, information regarding the minor's extended family on her father's side was known. However, we see nothing in the record that demonstrates there was any effort to contact or obtain information from the paternal aunts, paternal cousins, or any of J.D.'s relatives. Based on the dearth of information provided, it appears the Agency failed to obtain, at a minimum, the full names and birth dates or any identifying information for the paternal relatives. The Agency cannot fulfill its continuing duty of inquiry and notice by omitting known information, "[n]or can the juvenile court assume that because *some* information was obtained and relayed to the relevant tribes, the social services agency necessarily complied fully with its obligations." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.) The Agency failed its duty of inquiry. Therefore, the notices sent by the Agency were insufficient for purposes of the ICWA.

"[E]rrors in an ICWA notice are subject to review under a harmless error analysis." (*In re Brandon T.* (2008) 164 Cal.App.4th 1400, 1415.) Error is not presumed. It is J.D.'s obligation to present a record that affirmatively demonstrates error. (*In re D.W.* (2011) 193 Cal.App.4th 413, 417-418.) J.D. has done so here. If we

8

conclude the juvenile court did not comply with the ICWA provisions, we "reverse only if the error is prejudicial." (*In re A.L.* (2015) 243 Cal.App.4th 628, 639.) Given the state of the record, we cannot say with certainty that the notices were legally sufficient or that there was no prejudice to the relevant tribes.

The Agency either did not take sufficient affirmative steps to investigate the minor's possible Indian ancestry on the paternal side of the family or did not document its efforts to do so. In the absence of evidence of the Agency's efforts to fulfill its continuing duty of inquiry, we cannot say the failure of ICWA compliance was harmless. Moreover, "[t]he juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings." (*In re E.W.* (2009) 170 Cal.App.4th 396, 403.) The court never made an ICWA finding as to J.D., and we will not infer from the court's silence on the issue a finding that the ICWA does not apply given the error described above. A failure to conduct a proper ICWA inquiry requires reversal of the orders terminating parental rights and a limited remand for proper inquiry and any required notice. (*In re A.B.* (2008) 164 Cal.App.4th 832, 839; *In re D.T.* (2003) 113 Cal.App.4th 1449, 1454-1456.) We must therefore remand for limited proceedings to determine ICWA compliance.

9

**DISPOSITION**

The juvenile court's order terminating parental rights is conditionally reversed. The matter is remanded to the juvenile court for limited proceedings to determine ICWA compliance. If, at the conclusion of those proceedings, no tribe indicates the minor is an Indian child within the meaning of the ICWA, then the juvenile court shall make the appropriate ICWA finding and reinstate the order terminating parental rights. If the juvenile court finds, after proper inquiry and notice, that the ICWA applies, the juvenile court shall hold such further proceedings as are appropriate. In all other respects, the judgment is affirmed.

                                                                          /s/
                                                                  RAYE, P. J.

We concur:

     /s/
BLEASE, J.

     /s/
HOCH, J.